**UNITED STATES of America**

v.

**Jeremy SHARP, Defendant.**

**No. CRIM.A.3:06CR182.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 22, 2006.

Charles E. James, Jr., U.S. Attorney, Richmond, VA, for United States of America.

## MEMORANDUM OPINION

DOHNAL, United States Magistrate Judge.

This non-dispositive matter is before the Court upon referral by the district court pursuant to 28 U.S.C. § 636(b)(1)(A) on the Defendant's Motion to Reschedule Sentencing and Motion to Deny the *Ex Parte* Motion of Elizabeth Nowicki ("Nowicki") (docket entry nos. 17, 18).[1] The sole issue before this Court is whether Nowicki has standing as a "victim" pursuant to the Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act of 2004 ("Crime Victims' Rights Act," the "CVRA," or the "Act"), Pub.L. No. 108–405, 118 Stat. 2260 (2004) (codified at 18 U.S.C. § 3771), such that she is statutorily entitled to present a victim impact statement at the Defendant's forthcoming sentencing hearing. Having thoroughly reviewed both the Government's and Nowicki's relevant submissions and briefs, this matter is now ripe for decision.[2] For the reasons set forth here-

---

1. The sentencing court (J. Hudson) referred the matter to the undersigned to avoid any suggestion of potential bias in the ultimate sentencing decision prompted by the necessary review of Ms. Nowicki's submissions. *See* Order, Oct. 3, 2006 (docket entry no. 19).

2. This Court set oral argument regarding Nowicki's demand to offer testimony as a "crime victim" at the Defendant Sharp's sentencing proceeding for Tuesday, November 14, 2006. On the late afternoon of the day before the scheduled hearing, this Court received a facsimile transmission from Nowicki stating that she could not "voluntarily appear at the hearing...." The communication was received by the Court on the same day as an earlier facsimile submission from Nowicki that addressed, in detail, the issue before this Court and suggested both her willingness to attend the hearing, as well as her desire to pursue "victim" status for purposes of the Defendant's sentencing. Although Nowicki manifested an unwillingness to attend oral argument, her willingness to abandon pursuit of the ultimate issue, *i.e.*, whether she is a "crime victim" under the CVRA, is not as clear. Indeed, her most recent submission to the Court concludes with a continuing desire to provide a statement at the Defendant's sentencing proceeding if the Government were to support her position. Given Nowicki's ambiguous approach to the current proceedings, the Government's and Nowicki's substantive submissions addressing the issue that is in need of resolution, and the underlying necessity of bringing this matter to closure, the Court concludes that oral argument will not aid the decisional process because the facts and legal contentions are adequately

in, the Court finds that Nowicki is not a "victim" as that term is defined in the CVRA and therefore is not entitled to provide a victim impact statement to the district court at the Defendant's sentencing hearing. As such, the portion of the Defendant's motion seeking to preclude the admissibility of evidence by Nowicki at the Defendant's sentencing hearing is GRANTED.[3]

### 1. *Facts Supporting the Defendant's Guilty Plea*

Both the Government and the Defendant Sharp jointly submitted a Statement of Facts (Facts) in the trial court to substantiate the Defendant's plea of guilty to the underlying offense (docket entry no. 5). Thus, the facts surrounding the Defendant's guilty plea are not in dispute.

For approximately two years (February 2004 through February 2006), the Defendant was engaged in a conspiracy with others to distribute marijuana. (Facts ¶ 1.) The Defendant would regularly purchase various amounts of the drug (ranging from a quarter pound to seven pounds), and then divide the quantities into smaller amounts for redistribution. (*Id.* at ¶ 2.) On February 8, 2006, the Defendant participated in a recorded conversation with a confidential law enforcement

source, at which time he acknowledged the existence of a large drug debt ($40,000), his drug pricing standards, and the quantities of marijuana currently in his possession. (*Id.* at ¶ 4.) Relying on this information, the Government executed a search warrant at the Defendant's home, at which time the remnants of a marijuana growing operation, as well as marijuana residue and paraphernalia, were discovered. (*Id.* at ¶ 6.) The Defendant subsequently pled guilty before the sentencing court to conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 846.[4]

### 2. *Facts Surrounding the Purported Victim's Desire to Testify*

Nowicki, who has been engaged as a law professor at various prestigious institutions, asserts that she is a "victim" as that term is used in the CVRA such that she is entitled to give a victim impact statement at the Defendant's forthcoming sentencing hearing. In her September 20, 2006 *ex parte* letter to the Court, Nowicki claims that she was:

"physically, mentally, and emotionally abused by one of [the Defendant's] marijuana customers, [my former boyfriend],[5] whose violence and poor judg-

---

presented in the record before this Court, and that the matter deserves definitive resolution.

3. The trial court previously granted the motion to reschedule the sentencing proceedings. Order, Oct. 3, 2006 (docket entry no. 19). Thus, this portion of the Defendant's motion is moot.

4. In the Facts, the Defendant admitted that, had this matter proceeded to trial, the Government possessed sufficient evidence to prove that he conspired to distribute, and indeed possessed and distributed, more than 20 kilograms (but less than 40 kilograms) of marijuana. *See* Facts ¶ 7.

5. Nowicki's allegations against her former boyfriend are directed against an unrepresented person who is not a party to the Defendant's sentencing proceeding, has not been formally charged with any criminal wrongdoing, and has not been afforded the opportunity to deny or refute the allegations levied against him. As Nowicki's allegations, whether true or not, may materially prejudice her former boyfriend in both his personal and professional capacities, this Court will not use this person's identifying information (including his name) in this opinion. Instead, this Court will refer to the named individual simply as Nowicki's "former boyfriend" or, as in common parlance, "significant other." Furthermore, the Court is compelled to seal rele-

ment was at least partly attributable to the drugs [the Defendant] illegally sold to [my former boyfriend]." [6]

*See* Letter of Elizabeth Nowicki to the Honorable Henry E. Hudson, September 20, 2006 ("The First Letter"), at 1. The First Letter asserts that:

> "I know personally that [the Defendant] sold to [my former boyfriend], I know personally that [my former boyfriend] was under the influence of drugs when he abused me (he claims to have been high for every moment that he was with me throughout our relationship),[7] and I have done enough academic research over the past several months to conclude that I can tie [my former boyfriend's] abuse, erratic behavior, and violence to the marijuana."

*Id.*

In a subsequent letter to the Court, Nowicki concludes as follows: "... I am of the view that I am a victim of [the Defendant's] drug dealing, conspiracy, and trafficking because I was abused by drug addict [my former boyfriend]. [He] was a customer of [the Defendant's], and [he] was a chronic marijuana smoker. [He] was significantly impaired by the marijuana, such that he was abusive." *See* Letter of Elizabeth Nowicki to the Honorable Dennis W. Dohnal, November 13, 2006 ("The Second Letter"), at 1. Much of Nowicki's Second Letter surrounds her attempt to demonstrate the link between her for-

mer boyfriend's marijuana use and her subsequent abuse. For instance, Nowicki cites to various scholarly articles in asserting that

> "[v]iolent and aggressive behavior is directly linked to marijuana usage in at least four ways that have been examined by researchers:
>
> 1. Use of marijuana corresponds with increased violence and crime.
>
> 2. Intimate partner abuse is linked to marijuana usage. At least one study has shown that 75% of male batterers use marijuana.
>
> 3. Marijuana impacts the brain in a way that exacerbates mental problems and instigates psychosis such as paranoia. Mental psychosis is statistically linked to violence, and paranoia specifically is linked to violence.
>
> 4. Marijuana withdrawal is correlated with aggressive behavior (particularly within the first ten days of not smoking marijuana; symptoms of withdrawal start to appear as soon as 24 hours after last use). If a regular user is without money to buy marijuana even for just a day or a few days, he can be aggressive as his body begins the withdrawal process. The aggressive behavior tends to be worse at the beginning of the withdrawal pro-

---

vant submissions in consideration of the interests of such an unrepresented party who is accused of, among other actions, criminal conduct.

**6.** Among the many allegations levied by Nowicki against her significant other are various forms of physical abuse, including "punching me in the face, slamming my head backward into a cement pillar, shoving me, grabbing me by the arm and pulling/dragging me, throwing things at me...and trying to drag me down the stairs by my leg." Letter of Eliza-

beth Nowicki to the Honorable Dennis W. Dohnal, Nov. 13, 2006 ("The Second Letter"), at 4. The emotional and mental abuse included highly offensive references to the female gender (e.g., c**t, b***h, etc.) directed towards Nowicki, as well as the allegation that Nowicki's former boyfriend told her "at least twice that [she] should kill [herself]." *Id.*

**7.** Nowicki admits that this statement may have been hyperbole. *See* The Second Letter at 7.

cess, such that even short-term periods of abstinence are problematic."[8] The Second Letter at 2–3 (footnotes and citations omitted).

Nowicki's professed motivation in seeking standing as a "victim" of the Defendant's federal offense is admittedly noble: "[T]o vindicate the rights of every other battered woman in the Eastern District of Virginia who will never have the chance to tell a drug dealer how his dealing has impacted her life...[and]...to make sure that no other woman in a drug dealing sentencing in the [sic] our jurisdiction is denied her right to speak." The First Letter at 3 n. 6. Yet, as the analysis below reveals, the CVRA does not provide Nowicki standing as a "victim" for her to provide a victim impact statement at the Defendant's sentencing proceeding.

### Analysis

#### 1. Statutory Framework

Assuredly, victims of crime often do not feel their voices are heard or that their concerns are adequately addressed in the judicial process. Many express frustration with a judicial system that affords many rights to the accused while giving few to the victim. *See* H.R.Rep. No. 108–711, at 3 (2004), *as reprinted in* 2004 U.S.C.C.A.N. 2274, 2276.[9] Signed by President Bush into law on October 30, 2004, the CVRA seeks to rectify these inadequacies by providing "crime victims" direct standing to vindicate their procedural and substantive rights in criminal cases. Among the eight specific rights the CVRA confers on crime victims is:

> "The right to be reasonably heard at any public hearing in the district court involving...sentencing...."

18 U.S.C. § 3771(a)(4).[10] "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded" this right. *Id.* at § 3771(b)(1). However, only a "crime victim" is permitted to be heard at a defendant's sentencing, and the CVRA defines a "crime victim" as "a person *directly and proximately harmed* as a result of the commission of a Federal of-

---

**8.** With regard to this latter point, Nowicki submitted no evidence (nor did she allege) that her significant other suffered from marijuana withdrawal at any time during the alleged abuse.

**9.** For example, The Victim's Rights and Restitution Act of 1990 (VRRA), 42 U.S.C. § 10606 (repealed Oct. 30, 2004), included a list of victims' rights but lacked a concomitant enforcement mechanism for those rights. *See also United States v. McVeigh*, 106 F.3d 325, 334–35 (10th Cir.1997) (affirming district court's ruling denying victims and survivors of the Oklahoma City bombing from observing trial proceedings because, although VRRA provided right to be present at court proceeding related to offense, rights were unenforceable by appeal or mandamus because statute pledged only the "best efforts" of certain executive branch personnel to secure the rights listed); Fed.R.Crim.P. 32 (recognizing right, but not enforcement mechanism, for victims to be heard at sentencing).

**10.** The seven remaining rights guaranteed to crime victims by the Act are: (1) the right to be reasonably protected from the accused; (2) the right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused; (3) the right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at the proceeding; (4) the reasonable right to confer with the attorney for the Government in the case; (5) the right to full and timely restitution as provided in law; (6) the right to proceedings free from unreasonable delay; and (7) the right to be treated with fairness and with respect for the victim's dignity and privacy. 18 U.S.C. § 3771(a)(1)-(3) and (5)-(8).

fense...." *Id.* at § 3771(e) (emphasis added). Though the definition in theory is straightforward, the meaning behind the words is uncertain, especially with regard to the meaning of "proximate harm."

The CVRA's legislative history provides only minimal guidance as to the breadth and reach by which persons may seek to enforce their rights as a "crime victim" of a federal offense. During floor debate on the Act, Senator Jon Kyl, one of its primary sponsors, noted that the definition of "victim" in the CVRA is an "intentionally broad definition because all victims of crime deserve to have their rights protected, whether or not they are the victim of the count charged." [11] 150 Cong. Rec. S10910, 10912 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl). So far as this Court can discern, this statement provides the only legislative history concerning the reach of the term "crime victim" articulated in the statute. [12] And, although this definition is to be interpreted "broadly," this Court is nonetheless constrained by the words used in the statute: the CVRA only applies to Nowicki if she was "directly and proximately harmed" as a result of the commission of the Defendant's federal offense.

**2. Comparative Statutes**

Although no federal court has yet had the opportunity to examine the extent to which a person may qualify as a "victim" under the CVRA, courts have interpreted the word in the context of two different victims' statutes containing similar defining language—the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663, and the Mandatory Victims Restitution Act of 1986 ("MVRA"), 18 U.S.C. § 3663A. Both statutes define a "victim" as

> a person *directly and proximately harmed as a result of the commission of an offense* for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2) (VWPA) and 18 U.S.C. § 3663A(a)(2) (MVRA) (emphasis

---

11. *But see United States v. Turner,* 367 F.Supp.2d 319, 326 (E.D.N.Y.2005) (noting that the full Congress passed the CVRA knowing that similar language in an earlier victims rights bill had been interpreted by the Supreme Court *not* to refer to uncharged conduct). *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), held that the Victim and Witness Protection Act of 1982, discussed *infra* at 8–10, authorized restitution to a victim only for loss caused by the specific conduct which forms the basis for a defendant's offense of conviction. 495 U.S. at 413, 110 S.Ct. 1979. Since the statute at issue in *Hughey* and the CVRA use similar definitions of "victim," it appears that the same reasoning would exclude victims of uncharged conduct from the class of those entitled to participatory rights under the CVRA. *Turner,* 367 F.Supp.2d at 326–27.

12. Floor statements are not given the same weight as some other types of legislative history, such as committee reports, because they generally represent only the view of the speaker and not necessarily that of the entire body. However, floor statements by the sponsors of the legislation are given considerably more weight than floor statements by other members, and they are given even more weight where, as here, other legislators did not offer any contrary views. *Kenna v. U.S. Dist. Court for the Cent. Dist. of Cal.,* 435 F.3d 1011, 1015 (9th Cir.2006) (Kozinski, J.) (internal citation omitted). Since no one registered disagreement with Senator Kyl on this point, this Court may reasonably infer that the views he expressed reflected at least a consensus in the enacting body, the United States Senate. *Id.* at 1015–1016.

added in both statutes).[13] The Fourth Circuit's interpretation of the "direct and proximate harm" language contained in both statutes provides .a helpful guide for interpreting the meaning of the nearly identical language contained in the CVRA.

### A. VWPA

The VWPA provides that a federal court, when sentencing a defendant convicted of a federal offense, may order that "the defendant make restitution to any victim of such offense. . . ." 18 U.S.C. § 3663(a). The Fourth Circuit addressed the meaning of "victim" under the VWPA in *United States v. Blake*, 81 F.3d 498 (4th Cir.1996), a case where the defendant preyed on elderly women, stealing their purses and using their . credit cards. There, the defendant pled guilty to using stolen credit cards in violation of 18 U.S.C. § 1029(a)(2). *Id.* at 501. At sentencing, the district court ordered the defendant to pay restitution to the "victims" of the defendant's offense, namely, the persons from whom he had stolen the credit cards. *Id.* at 505–06. In reversing the restitution order, the Fourth Circuit held that the credit card holders were not victims under the VWPA. *Id.* at 506. The unanimous panel noted that, in order to qualify as a victim under the VWPA, a person must be directly and proximately harmed by either: (1) the conduct underlying an element of the offense of conviction; or (2) an act taken in furtherance of a scheme, conspiracy, or pattern of criminal activity, which is an element of the offense of conviction. *See id.* A person who has been harmed by conduct *not* falling within one of these scenarios is not entitled to an award of restitution by a sentencing court. *Id.*

The Fourth Circuit ultimately concluded that the credit card holders in *Blake* were not victims under the VWPA because they were not victims of the defendant's offense of conviction, *i.e.*, the essential elements of the defendant's crime—fraudulent use of unauthorized access devices—did not include the theft of the credit cards. The women lost no money from the defendant's use of their credit cards (a loss that would have been attributable to conduct underlying an element of the offense, to wit, use of an unauthorized credit card), and their claimed losses were limited to "only replacement costs of pocketbooks, wallets, and items of a similar nature." *Id.* at 507 n. 7. While noting that this "undesirable result" was compelled by the language of the statute even though it presented "poor sentencing policy," *id.* at 506, the Fourth Circuit nevertheless concluded that "the loss to the robbery victims was not caused by [the defendant's] offense of conviction." *Id.* at 507.

### B. MVRA

As part of the Antiterrorism and Effective Death Penalty Act of 1996, Congress passed the MVRA which, as its title suggests, makes restitution mandatory for victims of certain crimes, regardless of a defendant's ability to pay. *See* 18 U.S.C. §§ 3663A and 3664. The MVRA defines a victim in precisely the same way as does the VWPA. *Compare* . 18 U.S.C. § 3663A(a)(2) (defining "victim" in the MVRA), *with* 18 U.S.C. § 3663(a)(2) (defining "victim" in the VWPA). The Fourth Circuit recently construed the term in *United States v. Davenport*, 445 F.3d 366 (4th Cir.2006), a case involving a defendant

---

**13.** Since the CVRA does not specifically include as victims persons "directly harmed by the defendant's criminal conduct in the course of [a] scheme, conspiracy, or pattern" where the defendant's offense involves as an element a scheme, conspiracy, or pattern, this Court will focus its attention on the "direct and proximate harm" component of both the VWPA and MVRA for its statutory analysis of the CVRA.

who stole a woman's wallet and thereafter used one of the woman's credit cards to make a purchase. As was the case in *Blake, supra,* the defendant in *Davenport* pled guilty to using the stolen credit cards. *Id.* at 367. The district court ordered restitution paid to the financial institutions that suffered losses from fraudulent charges on the stolen credit cards, as well as to individuals who incurred losses resulting from the theft of their personal possessions. *Id.* at 373. The defendant challenged this restitution order on appeal.

The Fourth Circuit, per the same author of *Blake* (Chief Judge Wilkins), began its analysis by reiterating the standard by which a sentencing court may order restitution to victims under the MVRA. As is the case with the VWPA, the MVRA allows restitution only for: (1) those who are "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered"; and (2) "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id.* (citation omitted). Because the defendant's offense (fraudulent use of an access device) did not involve as an element "a scheme, conspiracy, or pattern," *see* 18 U.S.C. § 3663A(a)(2), the only question before the court was whether the "victims" were "directly and proximately harmed" by the offense of conviction. The Fourth Circuit held that they were not:

> A person is directly harmed, for purposes of the MVRA, when the harm results "from conduct underlying an element of the offense of conviction." *United States v. Blake,* 81 F.3d 498, 506

(4th Cir.1996) (construing identical language of the [VWPA] ). Under this definition, only the credit card company or companies liable for the fraudulent charges made [on the day the defendant used the stolen credit card] were directly harmed by the offense conduct. *See id.* at 506–07 & n. 5 (holding that the conduct forming the offense of fraudulent use of unauthorized access devices does not include the theft of the access devices). [The woman whose wallet was stolen] and the other individuals and businesses to whom restitution was awarded thus were not directly and proximately harmed by the conduct underlying the offense of conviction and are thus not entitled to restitution under the MVRA.

*Davenport,* 445 F.3d at 374.

### C. Applying the Fourth Circuit's Analysis to the CVRA

■ As noted above, the pertinent language of both the VWPA and MVRA define a victim as "a person directly and proximately harmed as the result of the commission of an offense for which restitution may be ordered...." 18 U.S.C. § 3663(a)(2) (VWPA) and 18 U.S.C. § 3663A(a)(2) (MVRA). Similarly, the CVRA defines a victim as "a person directly and proximately harmed as a result of the commission of a Federal offense...." 18 U.S.C. § 3771(e).[14] The standards are virtually identical. As both the *Blake* and *Davenport* courts make clear, an individual is only "directly and proximately harmed" when the harm results from "conduct underlying an element of the offense of conviction." *Blake,* 81 F.3d at 506; *Davenport,* 445 F.3d at 374. The Defendant in this case pled guilty to conspiracy to pos-

14. The CVRA also provides a victim with the statutory right to "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6).

sess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846. The elements of this offense are: (1) an agreement to possess marijuana with intent to distribute existed between two or more persons; (2) the defendant's knowledge of the illegal conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy.[15] *See United States v. Burgos,* 94 F.3d 849, 857 (4th Cir.1996) (applying elements to defendant convicted of possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846, the same statutes to which the defendant here pled guilty).

■ Applying the rationale of *Blake* and *Davenport* to the facts of this case reveals Nowicki's inability to establish "victim" status under the CVRA. The specific conduct underlying the elements of conspiracy to possess with intent to distribute marijuana that were the basis for the Defendant's offense of conviction does not include assault and battery, or any other violent conduct. *See Blake,* 81 F.3d at 506–07 & n. 5 (holding that the conduct forming the offense of fraudulent use of unauthorized access devices does not include the theft of the access devices). The assault and battery (or other variation of the purported abuse) allegedly inflicted on Nowicki neither assisted the Defendant in the commission of his federal offense, nor was it an essential element necessary for the accomplishment of his criminal acts. Therefore, Nowicki's alleged injuries were not caused by the Defendant's offense of conviction.[16]

Precedent finding a causal link where multiple acts have occurred between the original act and the purported victim are readily distinguishable. *See, e.g., United States v. Hackett,* 311 F.3d 989, 992–93 (9th Cir.2002) (defendant who pled guilty to aiding and abetting methamphetamine manufacture could be ordered to pay restitution to an insurance company for property damage caused when a co-defendant started a fire by placing a jar of chemicals used to manufacture methamphetamine on a hotplate); *United States v. Spinney,* 795 F.2d 1410 (9th Cir.1986) (upholding restitution award where defendant, intending to assault the victim, supplied a weapon to an intoxicated co-conspirator who used it to murder the victim). In *Hackett,* the defendant procured the supplies his co-defendants used to manufacture methamphetamine, and he had "knowledge and understanding of the scope and structure of the enterprise and of the activities of [his co-defendants]." 311 F.3d at 993. The Ninth Circuit Court of Appeals held that, even though there were "multiple links in [the] causal chain," this conduct was directly related to the insurance company's resulting loss. *Id.*

---

15. Drug quantity is not an element of the offense of conspiracy to possess with intent to distribute narcotics. *See United States v. Mills,* 995 F.2d 480, 484 (4th Cir.) (noting crime of conspiracy is based on illegal agreement, not on quantity of drugs to be distributed), *cert. denied,* 510 U.S. 904, 114 S.Ct. 283, 126 L.Ed.2d 233 (1993).

16. Since the Defendant's offense includes as an element a conspiracy, Nowicki could argue that she is a victim because she was harmed by an act taken in furtherance of the conspiracy. *See Blake,* 81 F.3d at 506; *Dav-*

enport, 445 F.3d at 373. However, to qualify under this standard, the act taken in furtherance of the conspiracy must be "specifically included as an element of the offense of conviction," *Blake,* 81 F.3d at 506, a burden that Nowicki once again fails to meet. The former boyfriend's alleged abuse obviously did not further the conspiracy to distribute marijuana. The temporal proximity between the Defendant's acts and the former boyfriend's alleged abuse is too attenuated and unrelated to fall within the parameters of the conspiracy.

In the current case, however, the facts do not support the same conclusion. Accepting Nowicki's allegations as true, the Defendant supplied Nowicki's former boyfriend with marijuana, and the former boyfriend consumed it. Therefore, as was the case in *Hackett*, the Defendant supplied the illegal substance. But that is where the similarities end. In *Hackett*, the court undoubtedly inferred that the volatile combinations of substances supplied by the defendant could cause an explosion if mixed improperly. *See id.; see also Spinney*, 795 F.2d at 1415–17 (defendant, convicted of conspiracy to commit simple assault, was cause of victim's death where defendant enlisted co-defendants to "scare" victim and then placed a loaded pistol in intoxicated co-conspirator's hand; "[i]t is all the more foreseeable that a conspiracy to assault someone could result in bodily injury to the victim."). Here, however, there is conflicting evidence, at best, suggesting that the Defendant's marijuana, when sold to and used by the former boyfriend, was known to cause aggressive behavior or violence in its users. In other words, Nowicki is unable to demonstrate that her alleged injuries were a foreseeable consequence of the Defendant's drug conspiracy. This Court cannot make such a causal leap given the evidence introduced in the record. There simply is no verifiable evidence from which this Court may conclude that the Defendant's participation in the drug conspiracy created the circumstances which led to Nowicki's alleged injuries. *See United States v. Dailey*, No. 05–4307, 189 Fed.Appx. 212, 215, 2006 U.S.App. LEXIS 17239, at *7–12

(4th Cir. July 10, 2006) (unpublished) (drug task force not a victim under VWPA and MVRA because not "directly and proximately harmed" by offenses of conviction (two drug offenses and one firearm offense) even though defendant damaged a recording device, which was owned by the task force, during an undercover drug buy).

### 3. A "Direct and Proximate" Cause Has Not Been Established

Courts, in their finitude, do not attempt to deal with cause and effect in any absolute degree, but only in such a limited way as is practical and as is within the scope of ordinary human understanding. Hence, arbitrary limits have been set, and such qualifying words as "proximate" and "natural" have come into use as establishing the limits beyond which the courts will not venture in an attempt to trace the connection between a given cause and a given effect. Nowicki comes to court alleging, as an effect, an injury that has been done to her person. She claims that prior to her injury, a wrongful act (the Defendant's conspiracy to distribute and subsequent distribution of drugs) occurred, and that, if this wrongful act had not occurred, she would not have been injured. Foreseeability is at the heart of proximate harm; the closer the relationship between the actions of the defendant and the harm sustained, the more likely that proximate harm exists. *See Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 713, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) (O'Connor, J., concurring). Whether one seeking to be heard [17] at a defendant's

---

**17.** The CVRA is silent as to whether it guarantees all victims the right to be heard orally, or whether it is satisfied by the court permitting the victim to submit a written statement. The word "heard" (in the context of a judicial proceeding) is capable of two conceptual meanings: (1) the right to submit both oral and written statements, or (2) the right to only speak aloud. The only court to address this statutory ambiguity, the Ninth Circuit Court of Appeals, held that the CVRA mandates that victims be given the opportunity to speak at proceedings covered by the CVRA. *See Kenna*, 435 F.3d at 1016 (citing the stat-

sentencing hearing is a "victim" under the CVRA is, therefore, a fact-specific question.[18]

Here, Nowicki is not a "victim" as that term is used in the CVRA because she is not a person "directly and proximately harmed" by the federal crime committed by the Defendant. The Defendant has pled guilty to conspiring to distribute marijuana. But linking this fact to Nowicki's abuse is too attenuated, either temporally or factually, to confer "victim" status on Nowicki as that term is used in the statute. Nowicki is no doubt an alleged victim of *her boyfriend's* violent ways. But Nowicki cannot demonstrate the nexus between the Defendant's act of selling drugs and her former boyfriend's subsequent act of abusing her. No consistent, well-accepted scientific evidence has been proffered to demonstrate that marijuana *necessarily* causes a person to become violent, and the Court certainly cannot take judicial notice of the same. Indeed, the authority is conflicting at best. *Compare* Office of National Drug Control Policy, *Marijuana Myths & Facts: The Truth Behind 10 Popular Misperceptions* at 10 (2006), http://www.whitehouse drugpolicy.gov/publications/marijuana _myths_facts/marijuana_myths_facts.pdf. (noting that marijuana users "are more likely than non-users to report aggressive behavior"), *with Ravin v. Alaska,* 537 P.2d 494, 507 (Alaska 1975) ("The experts generally agree that the early widely-held belief that marijuana use directly causes criminal behavior, and particularly violent, aggressive behavior, has no validity."), *and* Steven B. Duke, *Drug Prohibition: An Unnatural Disaster,* 27 Conn. L.Rev. 571, 575 (1995) (noting that marijuana may diminish rather than increase aggressive behavior).[19] Likewise, there is no evidence showing that Nowicki's significant other was not simply a "jerk," suffered from an anger management problem, or was otherwise predisposed to violence in one form or another, regardless of whether he was under the influence of marijuana at the time any alleged abuse occurred. Indeed, Nowicki even admits to the possibility that the Defendant's marijuana "had nothing to do with [her former boyfriend's] abusing [her]—perhaps [the former boyfriend] was just an evil person." *See* The Second Letter at 7.

In essence, to qualify as a victim, Nowicki would need to show a more direct link—or more specifically, a "direct and proximate" causal link—between the Defendant's act of selling marijuana to her boyfriend, and her boyfriend's subsequent abusive behavior against her. She would need to demonstrate not only that the Defendant conspired to sell marijuana, but also that the Defendant sold marijuana to her former boyfriend, that the boyfriend smoked the Defendant's marijuana, and

---

ute's legislative history and noting that the CVRA now gives victims an "indefeasible right to speak.") Accordingly, the issue here is whether Nowicki is entitled as a "victim" of the Defendant's criminal activity to appear and testify at his sentencing hearing and, since this Court holds that she is not, it is also not appropriate for the sentencing court to entertain any written submission in lieu of her testimony.

**18.** The issue appears to be one of first impression for the federal courts, as this Court has been unable to find a single case interpreting the limits and parameters of the term "crime victim" as the term is defined in the CVRA.

**19.** Additionally, the legislative history of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.,* the statute under which the Defendant has plead guilty and which was enacted to address drug abuse and drug trafficking, *see id.* at § 801(2), (3), clearly reveals Congress' conclusion that marijuana, though it undoubtedly leads to other adverse effects, does not necessarily cause violence or crime. *See* H.R.Rep. No. 91–1444 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4577–78.

that this drug usage caused her boyfriend to react such that he was compelled to violently attack Nowicki. The former boyfriend's propensity for violence while "high" on marijuana would need, at least, to be foreseeable. Nowicki has not, and presumably cannot, make such a showing. The only evidence offered by Nowicki is unsubstantiated and can be characterized, at best, as largely inadmissible hearsay with no identifiable exception. *See* Fed. R.Evid. 803 (explicating exceptions to the hearsay rule where availability of declarant is immaterial). But even if this Court were to accept Nowicki's allegations as conclusively true, she would still lack a remedy under the CVRA, for there are too many questions left unanswered concerning the link between the Defendant's federal offense and Nowicki's suffered abuse. The record is devoid of evidence demonstrating the former boyfriend's behavior when *not* using marijuana, an aspect which could certainly be used to contrast the former boyfriend's non-violent behavior when not using drugs with his allegedly violent propensities when "high" on marijuana. More importantly, however, there is no evidence in the record as to whether the former boyfriend's marijuana use was the catalyst for his subsequent abuse of Nowicki. In other words, Nowicki has failed to submit evidence that would help to prove the ultimate · issue before the Court—whether the Defendant's distribution of marijuana was the "direct and proximate cause" of Nowicki's physical and emotional abuse.

Individuals, whether "high" on drugs or drug-free, are responsible for their actions. The act of consuming marijuana by Nowicki's boyfriend, not the furnishing of it to him by the Defendant, was, at most, the proximate cause of Nowicki's sustained injuries. Thus, where the Defendant's act of furnishing the marijuana to Nowicki's significant other was not a "direct and proxi-

mate cause" of Nowicki's subsequent, alleged injuries, she lacks standing to give a victim impact statement under 18 U.S.C. § 3771. *Cf. Corrigan v. United States*, 815 F.2d 954, 956–57 (4th Cir.1987) (per curiam) (United States not liable under Federal Tort Claims Act for providing (through Army taverns) alcohol to underage Army private who struck third-party because providing alcohol was not proximate cause of the injury).

Nowicki has been unable to demonstrate that her injuries would not have occurred but for the Defendant's drug conspiracy. *See United States v. Donaby*, 349 F.3d 1046, 1054 (7th Cir.2003) (upholding restitution award for police department and utilizing "but for" standard to establish that defendant's crime of bank robbery was direct and proximate link which led to high-speed chase and resulting property damage to police car; "the need to elude the police after the robbery is a likely and foreseeable outcome of the crime."). Nor is there evidence tending to suggest that the Defendant's conspiracy was a substantial factor in causing Nowicki's alleged harm. Nowicki must show more than a mere *possibility* that an alleged act (the Defendant's federal crime) caused her boyfriend to physically and emotionally abuse her. Simply because the abuse occurred does not mean it was so because of the Defendant's offense, to wit, conspiring to distribute marijuana. Given the evidence in the record, this Court cannot conclude that the Defendant's wrongful act directly and proximately harmed Nowicki.

## Conclusion

It hardly necessitates reference to assert that drug offenses are, indeed, serious crimes, *Harmelin v. Michigan*, 501 U.S. 957, 1002, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) ("Possession, use, and distribution of illegal drugs represent one of the great-

est problems affecting the health and welfare of our population.") (internal quotation marks and citation omitted), and the Supreme Court itself has acknowledged a "direct nexus between illegal drugs and crimes of violence." *Id.* at 1003, 111 S.Ct. 2680. Clearly, drug dealers create victims. Victims of drug-related crime include those whose homes are robbed by addicts seeking to support their habit. Drug victims are also parents who see the lives of their children destroyed. Drug victims include, indeed, all of us who must bear the enormous cost of law enforcement incurred in the effort to combat the spread of drugs. All crimes, however, create those victims who are *indirectly* harmed by criminal activity. *See* U.S. Sentencing Guidelines Manual § 3D1.2, comment. (n.2) (noting that *society at large* is usually the victim of a drug offense). Nowicki is presumably one of these indirect victims, but not one who has been "directly and proximately harmed" by the Defendant's criminal actions sufficient, at least, to qualify her as a victim under the CVRA entitled to offer evidence at the Defendant's sentencing.

The CVRA only permits a victim to "be heard" at a defendant's sentencing proceeding *if* the victim is "directly and proximately harmed" by the defendant's federal criminal act. Nowicki's former boyfriend's alleged behavior was an independent, intervening cause which broke the chain of necessary causation. Nowicki's claimed injuries in this case therefore are too at-tenuated to qualify her as a "victim" as that term is used in the CVRA, *see* 18 U.S.C. § 3771(e), and, accordingly, she lacks standing to testify at the Defendant's sentencing hearing.[20]

An appropriate Order shall issue.[21]

### ORDER

This matter is before the court upon referral by the district court pursuant to 28 U.S.C. § 636(b)(1)(A) on the Defendant's Motion to Reschedule Sentencing and Motion to Deny the *Ex Parte* Motion of Elizabeth Nowicki ("Nowicki") (docket entry nos. 17, 18). For the reasons set forth in the accompanying Memorandum Opinion, it is ORDERED that:

1. The motion to exclude the testimony and any evidence of Ms. Elizabeth A. Nowicki at the Defendant's sentencing hearing is GRANTED, the additional relief seeking a continuance of the sentencing proceedings having been previously granted by the trial court; and

2. The Clerk shall place under seal all communications and submissions received or made from Ms. Nowicki, subject to further Order of a court of competent jurisdiction, and subject to disclosure without prior court approval to only counsel of record of the named parties.

Let the Clerk forward a copy of this Order to counsel for the United States and

---

**20.** Nowicki also alleged that she was not timely notified of the Defendant's sentencing proceeding, and that she was not afforded the right to confer with the attorney for the Government (AUSA), both in direct contravention of the rights conferred on victims by the CVRA. *See* 18 U.S.C. § 3771(a)(2) and (5). Certain documents filed under seal, however, reveal an extensive and ongoing communication between Nowicki and the Government such that her claim as to the denial of a right to confer with the AUSA is without merit. Furthermore, any claim as to a denial of timely notice regarding the change in the Defendant's scheduled sentencing date is rendered moot by the Court's holding that Nowicki is not a "victim" under the CVRA.

**21.** To include sealing of all the relevant, undefended allegations of Nowicki against an unrepresented third-party.

the Defendant, as well as to Ms. Elizabeth A. Nowicki at Cornell Law School, Myron Taylor Hall, Ithaca, New York 14853–4901.

It is so ORDERED.