# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

**Misc. Dkt. No. 2024-05**

————————————

**In re AG**
*Petitioner*

**Marco A. GARCIAJARA**
Airman First Class (E-3), U.S. Air Force
*Real Party in Interest*

————————————

Review of Petition for Extraordinary Relief in the Nature of
a Writ of Mandamus

Decided 28 June 2024

————————————

*Military Judge*: Lance R. Smith.

*GCM convened at*: Incirlik Air Base, Turkey.

*For Petitioner*: Captain Cailynn J. Houlihan, USAF; Devon A. R. Wells,
Esquire.

*For the United States*: Major Brittany M. Speirs, USAF; Major Jocelyn
Q. Wright, USAF; Mary Ellen Payne, Esquire.

*For Real Party in Interest*: Captain Michael J. Bruzik, USAF.

Before JOHNSON, ANNEXSTAD, and KEARLEY, *Appellate Military
Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as
precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

On 23 April 2024, pursuant to Rule 19 of the Joint Rules of Appellate Procedure for Courts of Criminal Appeals, Petitioner submitted to this court a petition for extraordinary relief in the form of a writ of mandamus and a motion to stay an order of the military judge in the pending court-martial of *United States v. Airman First Class Marco A. Garciajara.* The order in question, dated 22 April 2024, directed the 18th Medical Group (18 MDG) located at Kadena Air Base, Japan, to produce a list of Petitioner's mental health diagnoses and related prescriptions, and the name and address of civilian mental health treatment facilities where Petitioner sought care "from 1 January 2024 through the present." Petitioner requests: (1) an immediate stay of the order issued by the military judge in *United States v. Garciajara*; (2) the issuance of a writ to vacate the order; and (3) leave to supplement the petition "no later than 30 April 2024." On 25 April 2024, the Government opposed Petitioner's motion to stay the order.

On 26 April 2024, this court denied Petitioner's request for an immediate stay of the military judge's order. On the same date, this court granted Petitioner leave to supplement her petition with additional filings by 30 April 2024.

On 30 April 2024, Petitioner submitted a supplemental brief in support of her petition and moved this court to reconsider its denial of Petitioner's motion to stay the military judge's order. On 7 May 2024, the Government opposed Petitioner's motion to reconsider the denial of the stay. On 7 May 2024, this court denied Petitioner's motion for reconsideration, and ordered the Government and Real Party in Interest (RPI) to submit briefs in response to Petitioner's brief and supplemental brief no later than 28 May 2024.

The Government and RPI both filed responsive briefs on 28 May 2024; both parties contended this court should deny the petition because we lack jurisdiction to decide Petitioner's claim. Petitioner filed a reply brief on 3 June 2024.

Having considered the petition, the various briefs, and the matters attached thereto, we deny the petition.

## I. BACKGROUND

The petition, its supplement, the parties' response briefs, Petitioner's reply, and the several attachments indicate the following sequence of events.

On 7 March 2023, the RPI's squadron commander preferred one specification that the RPI committed sexual assault on FP and one specification that the RPI committed abusive sexual contact on FP, both in violation of Article

120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] The convening authority subsequently referred both specifications for trial by general court-martial, *United States v. Garciajara*. Petitioner AG is not a named victim of these alleged offenses, but she is a potential witness in the court-martial.

On 15 April 2024, trial counsel and trial defense counsel in *United States v. Garciajara* submitted a joint motion requesting the military judge issue an order to the 18 MDG to "produce a list of any mental health diagnoses, and prescriptions related to such diagnoses, for [Petitioner] and the name of any civilian treatment facilities where [Petitioner] has sought mental health services." The motion explained the Defense had previously sought discovery of "any and all records in the possession of the Government relating to [Petitioner's] transfer to inpatient care, and any and all records related to [Petitioner's] mental health treatment, diagnosis and prescription records from 1 January 2024 until the present." The motion further explained 18 MDG, on the advice of the Defense Health Agency (DHA) legal counsel, had "declined to provide any responsive records without a court order."

On 16 April 2024, Petitioner—through counsel—opposed the joint motion and "production of any mental health records." Petitioner contended: (1) the parties had failed to demonstrate the records were relevant and necessary in accordance with Rule for Courts-Martial (R.C.M.) 703; (2) the parties had "failed to meet their procedural burden under [Mil. R. Evid.] 513 to order an *in camera* review of the requested records;" and (3) the requested order would be "an unreasonable search and seizure" in violation of Petitioner's Fourth Amendment[2] rights. Petitioner asserted that although she was not a named victim in the RPI's court-martial, she was the "named victim in a case awaiting referral of charges to a general court-martial." In a section of Petitioner's brief entitled "Standing/Basis for Relief," Petitioner cited Article 6b, UCMJ, 10 U.S.C. § 806b, *Rights of a victim of an offense under this chapter*, asserting her status as a victim in a different case gave her standing to be heard in the RPI's court-martial with respect to her mental health records because "[t]here is no requirement in Article 6b[, UCMJ,] that [Petitioner's] rights only be applied in the case in which she is a named victim." Petitioner additionally cited *LRM v. Kastenberg*, 72 M.J. 364, 368, 370–71 (C.A.A.F. 2013), for the proposition that her "status as a victim afford[ed] her the right to assert, contest, or protect her

---

[1] Unless otherwise noted, references in this opinion to the UCMJ, the Rules for Courts-Martial, and the Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2024 ed.).

[2] U.S. CONST. amend. IV.

rights and privileges," including "evidence pertaining to [Petitioner] that is protected by operation of [Mil. R. Evid.] 513."

On 19 April 2024, via email, the military judge denied Petitioner's request for an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session and effectively granted the parties' joint motion, stating he would sign the requested order.[3] On 22 April 2024, the military judged signed an order directing 18 MDG to "produce":

> a. A list[ ] of any mental health diagnosis or diagnoses; and any prescriptions related to such diagnosis or diagnoses for [Petitioner] from 1 January 2024 through the present, contained within any records maintained at 18 MDG (or any subordinate clinic)[.] None of the responsive information should include any records or confidential communications between [Petitioner] and any mental health provider. . . .

> b. The name and address of any civilian mental health treatment facility where [Petitioner] has sought mental health care, from 1 January 2024 through the present, that is known to 18 MDG (or any subordinate clinic).

(Emphasis omitted). The military judge asserted this information was "not privileged," citing *United States v. Mellette*, 82 M.J. 374 (C.A.A.F. 2022), *cert. denied*, 143 S. Ct. 2637 (2023). In a footnote, the order directed 18 MDG not to provide "any patient records." The order noted the trial was scheduled to begin on 17 June 2024, and directed the "responsive information" must be provided to the named trial counsel by 6 May 2024.

In the meantime, on 18 April 2024, the convening authority referred for trial by general court-martial one specification of sexual assault in violation of Article 120, UCMJ, alleging a different accused (not the RPI) committed sexual assault against Petitioner. Thus, at the time Petitioner filed her petition with this court she was the named victim in another pending general court-martial, but not a victim in the RPI's general court-martial (*United States v. Garci-ajara*).

## II. DISCUSSION

### A. Law

"The [C]ourts of [C]riminal [A]ppeals are courts of limited jurisdiction, de-fined entirely by statute." *United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015) (citation omitted). The scope of an appellate court's authority, like other

---

[3] The military judge also invited Petitioner's counsel to draft a protective order for the military judge to sign.

questions of jurisdiction, is a legal question we review de novo. *See United States v. English*, 79 M.J. 116, 121 (C.A.A.F. 2019) (citations omitted); *United States v. Hale*, 78 M.J. 268, 270 (C.A.A.F. 2019) (citation omitted). "The burden to establish jurisdiction rests with the party invoking the court's jurisdiction." *United States v. LaBella*, 75 M.J. 52, 53 (C.A.A.F. 2015) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

The All Writs Act, 28 U.S.C. § 1651(a), grants a Court of Criminal Appeals (CCA) "authority to issue extraordinary writs necessary or appropriate in aid of its jurisdiction." *Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (citing *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005)). "However, the Act does not enlarge our jurisdiction, and the writ must be in aid of our existing statutory jurisdiction." *Id.* (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999)). The purpose of a writ of mandamus is to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (citations omitted). In order to prevail on a petition for a writ of mandamus, the petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004)); *see also In re KK*, ___ M.J. ___, Misc. Dkt. No. 2022-13, 2023 CCA LEXIS 31, at *10 (A.F. Ct. Crim. App. 24 Jan. 2023) (holding traditional mandamus standard of review applicable to Article 6b(e), UCMJ, petitions). A writ of mandamus "is a 'drastic instrument which should be invoked only in truly extraordinary situations.'" *Howell v. United States*, 75 M.J. 386, 390 (C.A.A.F. 2016) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983)).

In *LRM*, the United States Court of Appeals for the Armed Forces (CAAF) held this court had jurisdiction under the All Writs Act to hear the alleged victim's petition for a writ of mandamus. 72 M.J. at 367–68. The CAAF explained this was so because the petition sought a ruling on whether the military judge could limit the petitioner's right to be heard with respect to evidentiary rulings applying Mil. R. Evid. 412 and Mil. R. Evid. 513, which "ha[d] a direct bearing on the information that will be considered by the military judge when determining the admissibility of evidence, and thereafter the evidence considered by the court-martial on the issues of guilt or innocence." *Id.* at 368. Thus, because the alleged harm "had 'the potential to directly affect the findings and sentence,'" this court's jurisdiction over this interlocutory matter was "in aid of" its existing jurisdiction to review the findings and sentence of certain courts-martial. *Id.* (quoting *Center for Constitutional Rights v. United States (CCR)*, 72 M.J. 126, 129 (C.A.A.F. 2013) (citation omitted)).

Statutory interpretation is also a question of law we review de novo. *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017) (citation omitted). "Unless the text of a statute is ambiguous, 'the plain language of a statute will control unless it leads to an absurd result.'" *United States v. Schell*, 72 M.J. 339, 343 (C.A.A.F. 2013) (quoting *United States v. King*, 71 M.J. 50, 52 (C.A.A.F. 2012)) (additional citation omitted). "Whether the statutory language is ambiguous is determined 'by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). "Where 'only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law,' that meaning will prevail." *United States v. Beauge*, 82 M.J. 157, 162 (C.A.A.F. 2022) (quoting *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988)).

Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1),[4] states:

> If the victim of an offense under this chapter believes that . . . a court-martial ruling violates the rights of the victim afforded by a section (article) or rule specified in paragraph (4), the victim may petition the [CCA] for a writ of mandamus to require the . . . court-martial to comply with the section (article) or rule.

Article 6b(b), UCMJ, defines "victim of an offense under this chapter" as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense under [the UCMJ]."

Article 6b(e)(4), UCMJ, provides that this right to petition the CCA for a writ of mandamus applies with respect to protections afforded by, *inter alia*, Article 6b, UCMJ, and Mil. R. Evid. 513.

Article 6b(a)(9), UCMJ, provides that the victim of an offense under the UCMJ has, among other rights, "[t]he right to be treated with fairness and with respect for the dignity and privacy of the victim . . . ."

"After service of charges, upon request of the defense, the Government shall permit the defense to inspect any . . . papers, documents, [or] data . . . if the item is within the possession, custody, or control of military authorities and [ ] the item is relevant to defense preparation." R.C.M. 701(a)(2)(A)(i). "The military judge may, consistent with [R.C.M. 701], specify the time, place, and

---

[4] Congress originally enacted Article 6b, UCMJ, in December 2013, after the CAAF decided *LRM*. *See* National Defense Authorization Act for Fiscal Year for 2014, Pub. L. No. 113-66, § 1701, 127 Stat. 952–54 (2013).

manner of making discovery and may prescribe such terms and conditions as are just." R.C.M. 701(g)(1).

R.C.M. 703(e)(1) provides that, generally, "[e]ach party is entitled to the production of evidence which is relevant and necessary." R.C.M. 703(g)(2) provides that "[e]vidence under the control of the Government may be obtained by notifying the custodian of the evidence of the time, place, and date the evidence is required and requesting the custodian to send or deliver the evidence."

Mil. R. Evid. 513(a) provides that, in general:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

"Before ordering the production or admission of evidence of a patient's records or communication, the military judge must conduct a hearing, which shall be closed. . . . The patient must be afforded a reasonable opportunity to attend the hearing and be heard." Mil. R. Evid. 513(e)(2). The rule defines "[e]vidence of a patient's records or communications" as "testimony of a psychotherapist, or assistant to the same, or patient records that pertain to communications by a patient to a psychotherapist, or assistant to the same, for the purposes of diagnosis or treatment of the patient's mental or emotional condition." Mil. R. Evid. 513(b)(5). "The military judge may examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications." Mil. R. Evid. 513(e)(3). Mil. R. Evid. 513(d) enumerates several exceptions to the psychotherapist-patient privilege.

In *Mellette*, the CAAF held "diagnoses and treatments contained within medical records [including mental health records] are not themselves uniformly privileged under [Mil. R. Evid.] 513." 82 M.J. at 375. The CAAF explained, "[t]he phrase 'communication made between the patient and a psychotherapist' [in Mil. R. Evid. 513(a)] does not naturally include other evidence, such as routine medical records, that do not memorialize actual communications between the patient and the psychotherapist." *Id.* at 378.

## B. Analysis

The initial question we must answer is whether this court has jurisdiction to hear the instant petition. As creatures of statute, the CCAs have only so much jurisdiction as Congress has granted us. Petitioner bears the burden to demonstrate that jurisdiction exists. *See LaBella*, 75 M.J. at 53. Petitioner contends it does; the Government and RPI contend it does not. We conclude

Petitioner has not met her burden to demonstrate this court has jurisdiction to adjudicate the merits of the petition. We address Petitioner's most significant arguments regarding jurisdiction in turn.

**1. Article 6b, UCMJ**

Petitioner's primary argument is that she is the "victim of an offense under this chapter [(*i.e.*, the UCMJ)]," identified by name in the other pending court-martial. Article 6b(e)(1), UCMJ, provides that the "victim of an offense under this chapter" who believes "a court-martial ruling" violates, *inter alia*, her "right to be treated with fairness and with respect for [her] dignity and privacy" or her rights under Mil. R. Evid. 513, may petition the CCA for a writ of mandamus to require the court-martial to comply with the statute or rule. Therefore, she reasons, by the plain language of Article 6b, UCMJ, she may petition this court for mandamus relief from the military judge's actions in *United States v. Garciajara* which she contends violate her rights—notwithstanding that she is not a victim of the specifications charged in *United States v. Garciajara*, nor of any other alleged offense perpetrated by the RPI.

Thus this case presents an apparently novel question for this court: whether an alleged victim in one pending court-martial qualifies as a "victim of an offense under this chapter" for purposes of bringing a petition for a writ of mandamus pursuant to Article 6b(e), UCMJ, with regard to a separate court-martial in which she is not an alleged victim. We conclude Petitioner has failed to demonstrate that she has standing, or that we have jurisdiction, pursuant to Article 6b(e), UCMJ.

We recognize the unambiguous plain meaning of a statute controls unless it leads to an absurd result. *Schell*, 72 M.J. at 343. However, after considering the term "victim of an offense under this chapter" as defined by and used in Article 6b, UCMJ, including the context in which the language is used and the broader context of the statute as a whole, *see McPherson*, 73 M.J. at 395, we find the term is ambiguous as to whether it includes the victim of an offense other than the offenses charged in the proceeding that is the subject of the Article 6b(e), UCMJ, petition. On one hand, "the victim of an offense under this chapter," as used in Article 6b(e), UCMJ, might be read to mean, in effect, as Petitioner suggests, "*any* victim of *any* offense under this chapter;" or it might read to mean the "the victim of an offense under this chapter *that is charged in the proceeding that is the subject of the petition*," as the Government and RPI suggest. Petitioner has failed to persuade us her interpretation is the better one. Several considerations contribute to this conclusion, including but not limited to those described below.

One such consideration relates to the language of the statute. In enumerating a victim's specific rights under Article 6b(a), UCMJ, the statute

repeatedly refers to "the victim," "the offense," and "the accused." We find this language suggests the intent of the statute is to confer rights upon the victim of specific offenses alleged against a specific accused, rather than to grant rights to victims generally in all military justice proceedings, including courts-martial in which the individual is not a victim of the charged offenses. *Cf. United States v. Badders*, 82 M.J. 299, 303 (C.A.A.F. 2022) (finding the statutory language "terminates *the* proceedings *with respect to* a charge or specification" in Article 62(a)(1), UCMJ, 10 U.S.C. § 862(a)(1), "make[s] it clear that the article refers to terminating *that particular court-martial*").

Second, if, as Petitioner suggests, Article 6b(e), UCMJ, rights attach to victims of UCMJ offenses other than the offenses alleged in a specific military justice proceeding, the criteria for determining at what point an individual becomes "the victim of an offense under this chapter" is unclear. We note the convening authority referred the charge and specification in the other court-martial—the offense of which Petitioner is the named victim—on 18 April 2024, just five days before Petitioner filed her petition with this court. Is it the circumstance that the other court-martial happened to be referred for trial before she filed her petition that makes her eligible to appeal to this court under Article 6b(e), UCMJ? Would she have been ineligible on 17 April 2024? If so, such a distinction does not appear to be based on the language of Article 6b, UCMJ, itself. Article 6b(e)(1), UCMJ, plainly applies to pre-referral preliminary hearings under Article 32, UCMJ, 10 U.S.C. § 832. Other Article 6b, UCMJ, rights also evidently attach prior to referral, for example, the Article 6b(a)(2), UCMJ, rights to notice of public pretrial confinement hearings and of preliminary hearings. Is the status as a "victim of an offense under this chapter" then tied to preferral of charges, or the reporting of the offense to law enforcement, or some other event? Petitioner might contend it is unnecessary for us to determine the exact threshold, and that her status as the named victim in another court-martial is sufficiently definite for the instant case. However, as a matter of statutory interpretation, we find more persuasive the interpretation that "the victim" referred to in Article 6b(e)(1), UCMJ, means the victim of the accused and the offense that is the subject of the military justice proceeding that is the subject of the petition.

In addition, the RPI draws our attention to certain federal court decisions applying the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771.[5] *In re Antrobus*, 519 F.3d 1123 (10th Cir. 2008), involved a mandamus petition under the CVRA filed by the parents of a murder victim, Ms. **Q**. The petitioners

---

[5] "Article 6b[, UCMJ,] nearly mirrors the rights afforded to victims in civilian criminal trials under the CVRA." *United States v. Hamilton*, 77 M.J. 579, 582–83 (A.F. Ct. Crim. App. 2017) (en banc).

sought to have their daughter recognized as a victim in the sentencing proceeding of the individual who illegally sold the handgun used to commit the murder. *Id*. at 1124. The district court had ruled that although Ms. Q "undeniably was a crime victim," the illegal sale of the handgun and the murder were "too factually and temporally attenuated" for Ms. Q to be a victim of the illegal sale under the CVRA. *Id*. (citation omitted). The United States Court of Appeals for the Tenth Circuit found the district court's ruling was not "clearly wrong." *Id*. Cited in *Antrobus*, *United States v. Sharp*, 463 F. Supp.2d 556, 558 (E.D. Va. 2006) (mem.), involved a defendant who pleaded guilty to conspiracy to possession of marijuana with the intent to distribute. Ms. N sought to present a victim impact statement at the defendant's sentencing proceeding. *Id*. at 558. She contended her former boyfriend had physically, mentally, and emotionally abused her, and because she attributed this behavior at least in part to the marijuana the ex-boyfriend bought from the defendant, Ms. N argued she was a victim of the defendant's crime under the CVRA. *Id*. at 558–59. Similar to the result in *Antrobus*, the district court in *Sharp* concluded Ms. N "[wa]s not a 'victim' as that term is used in the CVRA because she is not a person 'directly and proximately harmed' by the federal crime committed by the [d]efendant." *Id*. at 566. Although these decisions are not directly on point, we do find them persuasive and supportive of a relatively narrow interpretation of who is a "victim" for purposes of Article 6b(e), UCMJ.

Accordingly, we are not persuaded Petitioner has standing to petition this court as a victim under Article 6b(e), UCMJ.

### 2. All Writs Act

Petitioner alternatively contends this court has jurisdiction to hear her petition under the All Writs Act, as interpreted by the CAAF in *LRM*. We are not persuaded.

In *LRM*, the essence of the trial-level controversy was the military judge's ruling that the petitioner, "through counsel or otherwise," had no standing to motion the court-martial for relief or to present argument on evidentiary matters related to Mil. R. Evid. 412 and Mil. R. Evid. 513. 72 M.J. at 366. The petitioner then petitioned this court for extraordinary relief in the nature of a writ of mandamus and a stay of proceedings. *Id*. at 367. Notably, although the petitioner was the alleged victim in the case, her petition to this court did not rely on Article 6b, UCMJ, which had not been enacted at the time. Instead, as described above, the CAAF subsequently ruled the CCA had jurisdiction under the All Writs Act because the military judge's Mil. R. Evid. 412 and Mil. R. Evid. 513 rulings "had 'the potential to directly affect the findings and sentence,'" and therefore this court's jurisdiction over the petition was "in aid of" its existing jurisdiction to review the findings and sentence of a court-martial under Article 66, UCMJ, 10 U.S.C. § 866 (*Manual for Courts-Martial, United*

*States* (2012 ed.)). *Id.* at 368; *see also United States v. Brown*, 81 M.J. 1, 5 (C.A.A.F. 2021) (noting *LRM* found the CCA's "statutory basis was potential jurisdiction if the accused was eventually convicted and sentenced").

Petitioner, like the petitioner in *LRM*, seeks CCA review of the military judge's actions based in part on a patient's rights under Mil. R. Evid. 513. However, we perceive an important distinction. In the instant case, the military judge's order explicitly avoids ordering the disclosure of information protected by Mil. R. Evid. 513, or indeed of any of Petitioner's patient records. Instead, the military judge ordered the production of: (1) a "list" of mental health diagnoses and prescriptions—expressly excluding any confidential communications—which, under *Mellette*, are not subject to the Mil. R. Evid. 513 privilege; and (2) the name and address of any civilian mental health facilities where Petitioner sought care which, in light of *Mellette*, we also conclude does not implicate the Mil. R. Evid. 513 privilege. *See Mellette*, 82 M.J. at 380; *cf. B.M. v. United States*, ___ M.J. ___, No. 23-0233, 2024 CAAF LEXIS 201, at *25 (C.A.A.F. 3 Apr. 2024) (Ohlson, C.J., concurring) ("[A]nother option would be for the military judge to order the victim's psychotherapist to submit an affidavit to the trial court that explicitly and solely addresses the victim's diagnoses, medications, and treatments."). Therefore, whereas *LRM* evidently involved at least a potential order to disclose Mil. R. Evid. 513 privileged material, the instant case—at least at this stage of the proceedings—does not. In addition, unlike the Mil. R. Evid. 513 motion at issue in *LRM*, we are not persuaded the military judge's order facilitating the discovery or disclosure of information from 18 MDG pursuant to R.C.M. 701 or R.C.M. 703 has a "direct bearing" on the evidence that will determine the findings or sentence in the RPI's court-martial. *See LRM*, 72 M.J. at 368. Accordingly, at this stage of the proceedings, we find *LRM* distinguishable, and conclude Petitioner has not met her burden to demonstrate our jurisdiction on this basis.

### 3. Fourth Amendment

Finally, Petitioner suggests she also has standing to petition this court for mandamus relief to protect her Fourth Amendment right to freedom from "unreasonable searches and seizures." U.S. CONST. amend. IV. Again, we are not persuaded. Petitioner fails to draw our attention to any decision holding that a federal judicial order to produce information from Government-owned records in the possession of a federal government agency constitutes a "search or seizure" or otherwise implicates an individual's Fourth Amendment rights. Neither of the cases Petitioner cites involves such a scenario. *See United States v. Johnson*, 53 M.J. 459, 460 (C.A.A.F. 2000); *United States v. Curtin*, 44 M.J. 439, 440–41 (C.A.A.F. 1996). Petitioner surely has statutory and regulatory privacy rights applicable to information in her mental health records in the possession of 18 MDG, but these are subject to lawful disclosure in accordance

with statutory, regulatory, and judicial processes. *Cf. In re A.L.*, Misc. Dkt. No. 2022-12, 2022 CCA LEXIS 702, at *8–16 (A.F. Ct. Crim. App. 7 Dec. 2022) (unpub. op.) (describing process for disclosure of protected health information in accordance with the Health Insurance Portability and Accountability Act (HIPAA), Public Law 104-191, and implementing regulations), *rev'd in part*, 83 M.J. 254 (C.A.A.F. 2023).

### III. CONCLUSION

Petitioner's petition for extraordinary relief in the form of a writ of mandamus is **DENIED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court