09-1576-op
In Re: Alba Ines Rendon Galvis

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

—————————————

August Term, 2008

(Argued: April 21, 2009)

Docket No. 09-1576-op

Decided: April 27, 2009)

—————————————

In Re: Alba Inés Rendón Galvis,

*Petitioner*,

—————————————

United States of America,

*Plaintiff,*

v.

Diego Fernando Murillo-Bejerano, a/k/a Don Bernardo, a/k/a Don Berna,
a/k/a Adolfo Paz, Vicente Castano-Gil, a/k/a Profe, David Donado,

*Defendants.*

—————————————

Before KEARSE, SACK, and HALL, *Circuit Judges*.

—————————————

The petitioner seeks relief by way of a petition for mandamus brought under the provisions of the Crime Victims Rights Act, 18 U.S.C. § 3771, seeking recognition as a crime victim and restitution for the death of her son. Because the petitioner's son's death was not shown to have been a direct and proximate harm resulting from the federal crime of conspiring to import cocaine with which the defendant was charged and to which he pled guilty, we hold that the petitioner is not a crime victim under the Act and is not otherwise entitled to restitution. The district court did not err in so finding nor abuse its discretion in denying petitioner's motion. The petition for mandamus is, therefore, DENIED.

—————————————

> Lee-Anne V. Mulholland (Leo P. Cunningham, *on the brief*), Wilson Sonsini
> Goodrich & Rosati, Palo Alto, CA (Roxanna Altholz, International Human Rights
> Law Clinic, University of California Berkeley School of Law, Berkeley CA, *on
> the brief*), *for Petitioner*.

Jesse M. Furman, Assistant United States Attorney (Eric Snyder and Anjan Sahni, Assistant United States Attorneys, *on the brief*, Katherine Polk Failla, Assistant United States Attorney, *of counsel* ), *for* Lev L. Dassin, Acting United States Attorney for the Southern District of New York, New York, NY, *for Plaintiff*.

James E. Neuman, New York, NY, *for Defendant Murillo-Bejarano*.

_____

PER CURIAM:

Before us is a petition for a writ of mandamus brought by Alba Inés Rendón Galvis ("Rendón") pursuant to 18 U.S.C. § 3771(d)(3) seeking to have this Court reassess her entitlement to certain rights afforded by the Crime Victims' Rights Act of 2004 ("CVRA"), 18 U.S.C. § 3771, and the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663.  The petition was filed on April 16, 2009.  The Court heard oral argument on April 21, within three days (not counting the intervening weekend) of the filing, and that day we issued an order denying the petition, noting that this opinion would follow.  In essence, Rendón appeals from the March 4, 2009 ruling of the United States District Court for the Southern District of New York (Berman, J.) denying her status as a crime victim in the case *United States v. Murillo-Bejarano*, No. 03-cr-1188.  Because the district court did not abuse its discretion in finding that Rendón was not a "crime victim" as defined by the CVRA, and because she has no standing to challenge the district court's ruling under the VWPA, we deny the petition.

**Background**

In 2002, Rendón's son, Juan Fernando Vargas Rendón ("Vargas"), was murdered in the Comuna 13 section of Medellín, Colombia, by paramilitaries affiliated with the Autodefensas Unidas de Colombia ("AUC")—classified by the United States Department of State as a terrorist organization.  His body was discovered in a mass grave.

2

Diego Fernando Murillo-Bejarano, an AUC leader and commander of the AUC subgroup operating in Comuna 13, Cacique Nutibara Bloc ("BCN"), was charged in a Colombian criminal proceeding with conspiring to commit the aggravated homicide and forced disappearance of residents of Comuna 13, including Vargas. Although he had not perpetrated the crimes directly, he pled guilty to the charges, confessing to being responsible for the crimes in his capacity as BCN commander. He was later extradited in 2008 to the United States, where he was charged in a two-count indictment with: (1) conspiracy to import into the United States, and to distribute with the intent that it be imported, at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 812, 952(a), 959(a), 960(b)(1)(B)(ii), and 963; and (2) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B) and 1956(h). After initially entering a plea of not guilty, he has now pled guilty in the district court to the first count of the indictment, with the agreement that the Government would move to dismiss the second count at sentencing. Neither the federal indictment charging Murillo-Bejarano, nor his plea agreement, aside from a stipulation that he possessed a firearm in connection with the count-one conspiracy offense, nor Murillo-Bejarano's colloquy at the change-of-plea proceedings makes reference to his engaging in any violent conduct.

In February 2009, Rendón filed a motion in the district court seeking to enforce her rights as a crime victim under the CVRA, the VWPA, and the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A,[1] to be allowed to confer with the Government, to be heard

---

[1] Under the CVRA, 18 U.S.C. § 3771(e), the term "crime victim" is defined as "a person directly and proximately harmed as a result of the commission of a Federal offense." For purposes of the MVRA and the VWPA:

> [T]he term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the

before sentencing, and to receive restitution. She argued that Murillo-Bejarano's participation in the charged conspiracy was the actual and proximate cause of her son's death because the AUC had targeted Comuna 13 for its importance as a drug-trafficking corridor, using disappearances and executions to gain control of the area, and because the AUC had financed its terrorist activities with drug proceeds. She argued that the CVRA should be interpreted to include the victims of any acts related to the charged conspiracy, regardless of whether the acts were described in the indictment or plea agreement, and also to include the victims of acts of the defendant's co-conspirators. Rendón claimed that a broad interpretation of the definition of "crime victim" under the CVRA is consistent with its underlying legislative intent. *See* 108 CONG. REC. S10912 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl) ("[A]ll victims of crime deserve to have their rights protected, whether or not they are the victim of the count charged.").

The Government and Murillo-Bejarano opposed Rendón's motion. The Government argued that Congress had intended to limit the definition of "crime victim" to those affected by the specific conduct that is the basis of the offense. The Government also argued that, even under a broader interpretation of "crime victim," the court would have to determine whether Vargas's murder was related to the AUC's narcotics operations, rather than to its other activities such as its conflict with the Fuerzas Armadas Revolucionarias de Colombia ("FARC"), and the Government pointed to evidence in the record showing that the AUC had not received all of its financing from narcotics. The Government further argued that Rendón was not entitled to restitution under the VWPA because she had not shown that her son's murder was in furtherance

---

case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.
18 U.S.C. § 3663A(a)(2), 18 U.S.C. § 3663(a)(2).

of the narcotics conspiracy. The Government also noted that although it was not obligated to do so, it had offered to confer with Rendón in advance of sentencing and, at the Court's discretion, to facilitate her participation in the sentencing process. For his part, Murillo-Bejarano argued that there was no evidence that Vargas's murder had been committed in furtherance of the drug conspiracy to which he had pleaded guilty. He suggested that Vargas's death had taken place in the course of a series of military operations in which an alliance of police, military, and local security forces had seized control of Comuna 13 from the FARC. He claimed that, "despite the fact that the order was not to commit any unnecessary serious crimes, excesses were committed," and he noted that he had previously accepted responsibility for "his failure as a military boss, to properly control his troops."

After hearing oral argument on the motion, the district court found that Rendón had not met the statutory definition of a "victim" under any of the statutes. In making its findings of fact, the district court credited Murillo-Bejarano's assertions that "excesses" had been committed despite his orders, as the BCN commander, that unnecessary serious crimes be avoided in Comuna 13. The district court further found that Murillo-Bejarano had accepted responsibility for Vargas's death based on his failure to control his troops, and had surrendered numerous properties to the Colombian Justice and Peace Process for victim compensation. As "background" for its ruling, the district court referred to evidence in the record stating that Comuna 13 had been overrun with "[l]eft-wing [guerillas], right-wing paramilitaries and well[-]armed drug gangs" and that "[i]n 2002, the casualty count for Comuna 13—in chaotic street fights, targeted assassinations and neighborhood-wide 'cleansings'—numbered in the hundreds." Based on these facts, the district court held, quoting from *United States v. Sharp*, 463 F. Supp.

2d 556, 566 (E.D. Va. 2006), that "[the movant] is not a victim as that term is used in the CVRA because she is not a person directly and proximately harmed by the federal crime committed by defendant." The district court also denied Rendón's motion with regard to restitution under the MVRA and the VWPA, indicating that the denials "follow[ed]" from the denial under the CVRA.

Rendón now argues to this Court that the district court abused its discretion by applying an elements-of-the-offense-based approach to analyzing whether she is a crime victim. She also argues that the district court abused its discretion by failing to assess independently her eligibility for restitution under the VWPA.

The Government and Murillo-Bejarano oppose the petition, arguing that the district court correctly found that the CVRA requires a putative victim to have been directly and proximately harmed as a result of the conduct underlying the elements of the offense to which the defendant has pled guilty and that, even if the district court erred in undertaking an element-based approach, it found correctly that Rendón has failed, as a matter of fact, to establish causation. The Government further argues that Rendón's VWPA claim is not governed by the CVRA's mandamus provisions and fails under the conventional mandamus standard and that the district court properly ruled, in any event, that the denial of the VWPA claim followed from denial of the CVRA claim because Rendón had failed to show that Vargas's murder was causally linked to the drug conspiracy. [2]

## Discussion

_____

[2] Murillo-Bejarano also argues that the petition should be denied because the process of determining restitution would be too complicated and time-consuming. Because of our disposition of the petition, we do not reach this argument.

6

The CVRA guarantees to the victims of federal crimes an array of substantive and participatory rights, including the rights "to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding," "to confer with the attorney for the Government in the case," and to receive "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(4)-(6). "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded th[ose] rights." 18 U.S.C. § 3771(b)(1). The district court must decide a putative victim's motion asserting rights under the CVRA, and, following denial of the motion, "the movant may petition the court of appeals for a writ of mandamus." 18 U.S.C. § 3771(d)(3). This Court reviews a district court's determination under the CVRA for abuse of discretion. *In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 563 (2d Cir. 2005). This Court reviews for clear error any factual findings made by the district court in determining a putative victim's motion to enforce her rights. *See United States v. De La Fuente*, 353 F.3d 766, 772 (9th Cir. 2003) (stating that, under the MVRA, the district court's factual findings underlying determination of victim status are reviewed for clear error, "including factual findings regarding causation"); *see also United States v. Olson*, 104 F.3d 1234, 1237 (10th Cir. 1997) (reviewing restitution order under the VWPA); *see generally Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990) ("When an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable: A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous.").

A "crime victim" is defined in the CVRA as "a person directly and proximately harmed as a result of the commission of a Federal offense;" a deceased crime victim's rights may be

7

asserted by a representative. 18 U.S.C. § 3771(e). The requirement that the victim be "directly and proximately harmed" encompasses the traditional "but for" and proximate cause analyses. *See In re Antrobus*, 519 F.3d 1123, 1126 (10th Cir. 2008) (Tymkovich, J., concurring); *Sharp*, 463 F. Supp. 2d at 567. The necessary inquiry is a fact-specific one. *See United States v. Hunter*, 2008 U.S. Dist. LEXIS 443, *17 (D. Utah Jan. 3, 2008), *mandamus denied*, *In re Antrobus*, 519 F.3d 1123.

Without expounding on its reasoning, the district court characterized the defendant's position as arguing that "Rendón is not a crime victim under the CVRA because the harm to her son was not a direct and proximate result of conspiring to import cocaine into the United States, which is the crime of conviction here," and, in agreeing with the Government, quoted *Sharp*'s holding that "[the movant] is not a victim as that term is used in the CVRA because she is not a person directly and proximately harmed by the federal crime committed by defendant." *See Sharp*, 463 F. Supp. 2d at 566 (finding victim's harm to be "too attenuated" from the conspiracy to satisfy the CVRA). The district court did not explicitly impose any *per se* rule defining a victim according to the elements of the crime or offense of conviction. To the extent that the district court adopted the Government's argument in that regard, however, we need not decide here whether such a rule is appropriate because the district court correctly found that, even considering Rendón's factual allegations, there was insufficient evidence of a nexus between Vargas's death and Murillo-Bejarano's participation in the charged conspiracy to import cocaine.

It is undisputed that Vargas was murdered and that Murillo-Bejarano was, to some extent, responsible. With regard to the federal crime of conspiring to import cocaine into the United States, however, Rendón has alleged only that there was a symbiotic relationship between the

AUC's drug-trafficking and its terrorist operations and that Vargas's abduction and murder took place in a geographic area that was significant for the AUC's drug-trafficking operations. Rendón has not specified a motivation for Vargas's murder, stating both that the AUC used force to secure strategic drug-trafficking areas and also that the AUC targeted individuals who did not express support for the AUC. Evidence in the record demonstrates that active military operations involving the AUC were ongoing in Comuna 13 at the time of Vargas's death and that Murillo-Bejarano' AUC subgroup, the BCN, had multiple sources of funding.

Based on the submissions by Rendón and Murillo-Bejarano, the district court found that Murillo-Bejarano had accepted responsibility for Vargas's murder in his capacity as a military leader, and that there was "chaotic" violence in Comuna 13 inflicted by both drug gangs and paramilitaries. While the evidence may suggest some linkages between Vargas's murder and the drug conspiracy, we do not find any clear error in the district court's conclusion that Rendón ultimately failed to show the requisite causal connection between the two. As in *Sharp*, "there are too many questions left unanswered concerning the link between the Defendant's federal offense and [the petitioner's harm]." *Sharp*, 463 F. Supp. 2d at 566. Because we find no clear error in the district court's finding that Rendón did not establish direct and proximate harm either to herself or to her son resulting from Murillo-Bejarano's participation in the drug conspiracy with which he has been charged and to which he has pled guilty, the district court properly determined that Rendón was not a "crime victim" and thus did not abuse its discretion in denying her motion.

To the extent that Rendón petitions independently for relief under the VWPA, we deny mandamus because that statute does not provide a private remedy for victims denied

9

restitution.  *See United States v. Grundhoefer*, 916 F.2d 788, 792-793 (2d Cir. 1990) ("The victim as a non-party is accorded only a limited presence at a sentencing proceeding and has no right to appeal an inadequate remedy.") (citing *United States v. Brown*, 744 F.2d 905, 910 (2d Cir. 1984)); *see also United States v. Mindel*, 80 F.3d 394, 395-96 (9th Cir. 1996) (holding that crime victim lacks standing to appeal or to petition for mandamus review of order rescinding restitution payments).  We do note that the district court properly found that Rendón did not satisfy the definition of victim under the VWPA because she failed to demonstrate that she was "directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."  18 U.S.C. § 3663(a)(2).

## Conclusion

For the foregoing reasons, we hold the district court did not abuse its discretion in denying Rendón's motion to enforce her rights as a victim and DENY the petition for mandamus.