# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Submitted: May 20, 2009)                                  Decided: June 9, 2009)

Docket No. 09-2113-op

_____

In re: Local #46 Metallic Lathers Union and Reinforcing Iron Workers and Its Associated Benefit and Other Funds,

*Petitioner*,

_____

United States of America,

*Appellee,*

Charles Doherty,

*Defendant-Appellee,*

v.

Metal Lathers Local 46 Pension Fund,

*Movant-Appellant.*

_____

Before JACOBS, *Chief Judge*, STRAUB and HALL, *Circuit Judges*.

_____

The petitioner seeks relief by way of a petition for mandamus brought under the provisions of the Crime Victims' Rights Act of 2004, 18 U.S.C. § 3771, and the Mandatory Victims Restitution Act of 1996, 18 U.S.C. §§ 3663A-64, seeking recognition as a crime victim and restitution for payments required under certain collective bargaining agreements.  Because the offense of conspiring to engage in money laundering to which the defendant pleaded guilty did not include activity in the course of that scheme or conspiracy that caused the petitioner's loss, the offense conduct was not shown to have been a direct harm to the petitioner; thus, we hold that the

petitioner is not a crime victim under the Act and is not entitled to restitution. The district court did not err in so finding nor abuse its discretion in denying petitioner's motion. The petition for mandamus is, therefore, DENIED.

_____

> Andrew J. Weinstein, Weinstein & Mazurek PLLC, New York, NY, *for Petitioner*.
>
> Peter A. Norling, Chief, Appeals Division, and Burton T. Ryan, Assistant United States Attorney *on the brief*, *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.
>
> James O. Druker, Kase & Druker, Garden City, NY, *for Defendant-Appellee Charles Doherty*.

_____

PER CURIAM:

Before us is a petition for a writ of mandamus brought by Local #46 Metallic Lathers Union and Reinforcing Iron Workers and its associated benefit and other funds ("Local 46") pursuant to 18 U.S.C. § 3771(d)(3) to have this Court reassess entitlement to certain rights afforded by the Crime Victims' Rights Act of 2004 ("CVRA"), 18 U.S.C. § 3771, and the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A-64, and to order the district court to award restitution pursuant to § 3771(a)(6). The petition was filed on May 19, 2009. The Court took the case on submission on May 20, 2009, and on May 22, 2009, within three days of the filing, we issued an order denying the petition, noting that this opinion would follow. In essence, Local 46 appeals from the May 7, 2009, ruling of the United States District Court for the Eastern District of New York (Seybert, *J.*) that denied Local 46 status as a crime victim in the case *United States v. Doherty*, No. 05-cr-494. Because the district court did not abuse its discretion in finding that Local 46 was not a "crime victim" as defined by the CVRA and the MVRA, we deny the petition.

2

**Background**

In 2005, Charles Doherty pleaded guilty to an information charging him with one count of conspiracy to launder money in violation of 18 U.S.C. §§ 1956(h) and 3551, *et seq.*, based on his actions as president of U.S. Rebar. The information charged that the conspiracy entailed three unlawful activities—uttering forged checks, theft concerning programs receiving federal funds, and mail fraud. As to uttering forged checks, Doherty admitted during his plea colloquy that he forged checks from U.S. Rebar payable to fictitious vendors, and provided those checks to Joseph Castello, a check casher who cashed the checks and transferred the cash, minus a fee, to Doherty, who then used the cash to pay union employees off the books. At the plea proceedings, the Government clarified further that Doherty orchestrated the cashing of checks that constituted payments owed to U.S. Rebar, some of which were payments for government contracts. The endorsements of the checks that were cashed were either forged or falsely completed, which resulted in creation of false banking records and thus were a basis for mail fraud.[1] Doherty admitted that the monies he received were "for purposes of paying certain employees in cash, thereby allowing them to avoid reporting a portion of their income to the IRS," and the employees were paid "the full amount that they would have gotten in cash."

Based on Doherty's plea, Local 46 moved for restitution pursuant to the MVRA and the CVRA, contending that the collective bargaining agreements between itself and U.S. Rebar required U.S. Rebar to make payments to union funds and that by paying employees in cash, U.S. Rebar had evaded that requirement.

---

[1] The theft concerning programs receiving federal funds, although not addressed in any detail in the plea colloquy, arose from Doherty's use of minority-owned contracting companies as fronts to obtain public contracts, and his diversion of the payments on those contracts.

3

At sentencing a debate ensued between the Government and Doherty regarding the dollar amount cognizable as laundered proceeds. Significantly, in view of Local 46's claim, the Government argued: "[t]he fact that [Doherty] used [the proceeds] as expenses for running his construction company is not a part and parcel of the crimes . . . committed, and were not expenses related to those crimes," and that Doherty's use of most of the laundered money to pay business expenses was a separate scheme, and therefore, irrelevant. Doherty's counsel, seeking to limit Doherty's exposure under the Sentencing Guidelines, *see* U.S.S.G. § 2S1.1, countered that the gains attributable to Doherty's crime should exclude the amount paid as business expenses. Counsel argued that Doherty should not be held responsible for the total amount of the laundered checks because the money from the check cashing went to pay employees, and paying employees in cash was the "whole raison d'etre" of the scheme.

The parties and the court later agreed that all of the proceeds of the fraudulent check cashing scheme constituted proceeds under the money laundering statute, 18 U.S.C. § 1956(a), but, apparently by way of compromise, they agreed that the payments to employees under the federal contract scheme would not be counted as proceeds under § 1956. Local 46 was given an opportunity to allocute extensively concerning the impact of Doherty's behavior on the union. When the district court asked about restitution, the Government cited the difficulty of calculating restitution generally, but did not argue against restitution of Local 46 on the ground that it was not a victim. Doherty's counsel explained to the district court that both the Government and Doherty had tried to ascertain the amount of restitution, but could not do so with reasonable certainty. Given the complexities of determining any loss to Local 46, the district court

4

sentenced Doherty to a term of imprisonment and a fine, but referred the issue of restitution to a magistrate judge.

Before the magistrate judge, Doherty argued for the first time in response to the restitution request that Local 46 was not a victim under the MVRA because restitution was required only for conduct of which a defendant had been convicted. In support of his argument, Doherty pointed out that in his cooperation agreement with the Government, he agreed to plead guilty to one count of money laundering conspiracy, and in exchange, the Government agreed not to bring any additional criminal charges for Doherty's "activity involving his fraud in connection with . . . defrauding union benefit funds." Thus, adding a new argument to those he advanced at his sentencing proceeding, Doherty contended that the conspiracy of which he was convicted did not include his ultimate plan to use the laundered cash to pay employees, nor did it include as an element any conduct that had a direct impact on Local 46.

Local 46 replied that Doherty had conceded its victim status by failing previously to object or challenge restitution on that ground. Local 46 also argued that although the specified unlawful acts of the conspiracy were the forged checks, the federal contract fraud, and the mail fraud, the acts of money laundering were completed by the financial transactions using the proceeds of those activities, i.e., cash payments to employees.

The magistrate judge recommended that Local 46's motion be denied, agreeing with Doherty that his receipt of the cash from Castello constituted the relevant financial transactions and completed the acts of money laundering. The magistrate judge went on to state that the common goal of the conspirators was to turn the forged checks into cash and that the use of the cash to pay the workers was not part of the scheme. Quoting *United States v. Donaghy*, 570 F.

5

Supp. 2d 411, 426 (E.D.N.Y. 2008), the report and recommendation concluded that the MVRA allows for recovery only for conduct that is "'part of the applicable scheme, conspiracy, or pattern of conduct that is the offense of conviction,'" and that Local 46 has not suffered direct and proximate harm from the offense of conviction as required for an award under the MVRA.

Local 46 objected to the magistrate judge's findings, arguing that the analysis conflated the unlawful activity element, forging a check, with the financial transaction and contending that the magistrate judge had ignored evidence in the record establishing that cash payments to employees was the goal of the conspiracy between Doherty and Castello. Doherty testified (at Castello's trial) that he gave Castello checks to get cash to pay Doherty's employees, and said at his plea hearing that he had cashed fraudulent checks "for purposes of paying certain employees in cash."

The district court adopted the magistrate judge's report and recommendation in its entirety, finding that Local 46 had not been directly and proximately harmed by Doherty's money laundering because the offense was complete at the moment Castello handed the cash to Doherty. The court agreed that restitution was not available under the MVRA for harm caused by the actions of a single conspirator acting outside the conspiracy as part of a broader uncharged scheme. Local 46 filed a petition for mandamus in this Court to challenge that adverse determination under the provisions of the CVRA. *See* 18 U.S.C. § 3771(d)(3).

In its petition for mandamus Local 46 concedes that the definitions of "victim" under both the CVRA and MVRA are coterminous, and it agrees "with the District Court's determination that 'a person may be entitled to restitution only if he or she was directly and proximately harmed as a result of [defendant] Doherty's conspiracy to launder money.'" Local

6

46 argues that it is a victim of Doherty's specific offense of conviction, *i.e.,* the money laundering conspiracy to which Doherty pleaded guilty. It "faults the District Court's application of the facts of [the] case to the legal standard defining a victim according to the elements of the crime or offense of conviction," and reiterates arguments made below that Doherty's cash payments to his employees were the financial transactions that completed the money laundering conspiracy. For support of this argument Local 46 points to the district court's agreement, at sentencing, with respect to the federal contract theft activity that only the cash payments that exceeded the amount of cash paid to employees would be counted for sentencing purposes; thus the cash payments to employees were a part of the federal contract laundering activity even if not a part of the check forging activity. In addition, Local 46 argues that Doherty's testimony at Castello's trial regarding the purpose for which the laundered funds were used contradicts the court's conclusion that there was no basis for finding that the cash payments were part of the conspiracy.

## Discussion

Local 46 argues that the money laundering conspiracy to which Doherty pleaded guilty included Doherty's cash payments to union workers. The dispositive issue is therefore whether the conspiracy to launder money for which Doherty was convicted was complete when Castello transferred the cash to Doherty or whether it included making cash payments to employees with the monies received in the laundering process. It is those cash payments, Local 46 alleges, that deprived it of benefits due under collective bargaining agreements. For the reasons that follow, we hold that the district court did not abuse its discretion in determining that the conspiracy

7

charge to which Doherty pleaded guilty did not encompass the activity of which Local 46 was a victim.

"The CVRA guarantees to the victims of federal crimes an array of substantive and participatory rights, including the right[] . . . to receive 'full and timely restitution as provided in law.'" *In re Rendon Galvis*, 564 F.3d 170, 174 (2d Cir. 2009) (*per curiam*) (quoting 18 U.S.C. § 3771(a)(6)). "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded th[ose] rights." 18 U.S.C. § 3771(b)(1). "The district court must decide a putative victim's motion asserting rights under the CVRA, and, following denial of the motion, 'the movant may petition the court of appeals for a writ of mandamus.'" *Rendon Galvis*, 564 F.3d at 174 (quoting 18 U.S.C. § 3771(d)(3)).

We review a district court's determination under the CVRA for abuse of discretion. *See In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 563 (2d Cir. 2005). The MVRA defines a victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2).[2]

---

[2] This Court has not yet determined whether the CVRA's definition of crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense" is the same as the MVRA definition. We need not decide that issue in this case, however, because petitioner has argued this case under the provision of the MVRA concerning offenses that involve a conspiracy, such as the one here, and does not press us to look beyond that provision for purposes of defining the statutory term "victim."

As Local 46 has conceded, the district court's statutory authority to award restitution under the MVRA is limited to awards to victims of the offense of conviction. *See Hughey v. United States*, 495 U.S. 411, 416-19 (1990) (addressing prior version of the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3579, which provided that at sentencing, a district court was authorized to award restitution to "any victim of such offense"). Although *Hughey* involved the pre-amendment version of the VWPA, courts have extended its analysis to the amended version of that statute. *See, e.g.*, *United States v. Hughey*, 147 F.3d 423, 437 (5th Cir. 1998) ("That part of *Hughey* which restricted the award of restitution to the limits of the offense, however, still stands."). We have approved of this analysis and, because the amended version of the VWPA contains identical language to the MVRA, we have further extended *Hughey* to the MVRA. *United States v. Oladimeji*, 463 F.3d 152, 158-59 (2d Cir. 2006) (holding that the relevant question in imposing restitution under the MVRA is whether the "loss [is] caused by the specific conduct that is the basis of the offense of conviction"); *see also United States v. Akande*, 200 F.3d 136, 141 (3d Cir. 1999) (holding that "[t]he conduct underlying the offense of conviction thus stakes out the boundaries of the restitutionary authority" under the MVRA).

Local 46 asserts that the district court abused its discretion in finding that Local 46 is not a victim of the money laundering offense to which Doherty pleaded guilty and, therefore, not entitled to restitution under the MVRA. Local 46's argument is essentially fact-based, urging that the circumstances support a determination that Local 46 was a victim of Doherty's scheme to get cash to pay union workers thus avoiding an obligation to pay monies owed to Local 46 under certain collective bargaining agreements. Upon examination those arguments fail. There has been no abuse of discretion because the magistrate judge and district court's determinations that

9

Local 46 was not a crime victim are supported both by the district court's rulings at sentencing and by the terms of the cooperation agreement. *See e.g., Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 149 (2d Cir. 1999). While Doherty admittedly had a plan to obtain laundered money and then use that money to pay U.S. Rebar's employees in cash and simultaneously avoid paying taxes and union obligations, the only criminal charge that the Government brought and of which Doherty stands convicted is conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956(h). Doherty pleaded guilty to one count of conspiracy to launder money which, as applicable to Doherty's case requires the Government to prove that a defendant conspired to commit the following offense, to wit:

> . . . knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[ing] or attempt[ing] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or . . .
>
> (B) knowing that the transaction is designed in whole or in part--
>
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. . . ;

18 U.S.C. § 1956(a)(1). We agree with the well reasoned ruling of the magistrate judge that:

> the crime of which [Doherty] was convicted-conspiracy to launder money-was "completed" when he received the cash from Castello. In some money laundering cases, a defendant already has cash that needs to be laundered through some financial transaction. Here, however, it was the receipt of the cash from the fraudulent checks that completed the crime. Doherty might have done anything or nothing with the cash after he received it, but the crime of conspiracy to launder money, which here included the crime of laundering money, had already been committed by the time the cash was given to the union workers. It was the common goal of the co-conspirators to turn false checks into cash and there is no

> basis for finding that the use of that cash to pay union workers was part of the conspiracy.

*United States v. Doherty*, No. 05-CR-0494(JS)(WDW), 2009 WL 1310877, at *7 (E.D.N.Y. May 7, 2009) (Wall, *Mag. J.*).

Given the elements of the crime to which Doherty pleaded guilty, if we were to adopt the position that Local 46 advocates, we would have to engage in an expansive redefining of the term "victim." The definition applicable to Local 46's circumstances reads: "[I]n the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, [a victim is] any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). While the language expands what it is that will give rise to a compensable loss when a scheme, conspiracy or pattern is involved, the reference point to which such conspiracy is tied remains the "offense" of which the defendant has been convicted. *See* 18 U.S.C. § 3663A(a)(1) ("[W]hen sentencing a defendant *convicted of an offense* described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim *of the offense*. . . ." (emphasis added)). That is, the "scheme, conspiracy, or pattern of criminal activity" must be an "element" of that "offense" in order for the conduct in the course of the scheme or conspiracy to be considered as a basis for determining compensable harm.

Notwithstanding what Doherty planned to do with the laundered funds once he had them in his possession, the "offense" to which he pleaded guilty was solely and exclusively the conspiracy to engage in money laundering. The cooperation agreement (a) required Doherty to plead guilty to a money laundering conspiracy and (b) barred the Government from prosecuting

11

Doherty for activities related to "defrauding union benefit funds." It is therefore clear that the offense of conviction was not conspiracy to defraud the union. Local 46's expanded definition of "victim" ignores the term "offense" in § 3663A and would force the sentencing court to ascertain some overarching uncharged scheme or conspiracy, one element of which is the specific offense to which the defendant pleaded guilty.[3]

With reference only to *United States v. Santos*, 128 S.Ct. 2020, 2025 (2008), holding that the term "proceeds" in the money laundering statute is defined as profits, not gross receipts, of an illegal activity, Local 46 argues that because the district court allowed the funds paid to the workers to be deducted from the laundered monies derived from the federal contract scheme for which Doherty would be held accountable, that accommodation proved the laundering scheme included the cash payments to those workers. This, in turn, was proof that Local 46 was a victim of the contract fraud laundering. Although, unlike its consideration of the fraudulent check

---

[3] A decision of the Ninth Circuit could be interpreted to contradict our position, as it states that the amendment to the VWPA overrules the holding in *Hughey* and allows restitution to be granted to those "'harmed in the course of the defendant's scheme *even beyond the counts of conviction*.'" *United States v. Brock-Davis*, 504 F.3d 991, 999-1000 (9th Cir. 2007) (emphasis in original) (quoting *United States v. Rutgard*, 116 F.3d 1270, 1294 (9th Cir. 1997)). In reaching that conclusion, the Ninth Circuit determined that conduct not specifically mentioned in an indictment charging a conspiracy to manufacture methamphetamine on a specific date and at a specific location, was, in fact, "related conduct" for which restitution could be granted. *Id.* at 999. The Ninth Circuit ordered restitution for damages to a motel caused by the conspirators' manufacturing of methamphetamine that occurred on a different date and in a different city than that alleged in the indictment. *Id.* The case, however, can be read to correspond with the instant decision because the Ninth Circuit, in effect, found that the conduct for which restitution was granted, which was identical to the charged conduct, was a part of the "pattern of criminal activity" that formed the basis of the conspiracy to manufacture methamphetamine. A comparable situation in the case before us would arise if the indictment had identified specific forged checks and a victim suffering a loss as a result of a non-identified forged check that had also been laundered had moved for restitution. That is not this case, however, as Local 46 is asserting victim status based on Doherty's acts of payment to his employees, acts that are different from, and outside of, the charged activities.

uttering activity, the district court did allow Doherty to exclude the amounts from the federal contract fraud that were paid to the workers in calculating his sentence, that fact does not justify a finding that the district court abused its discretion by denying Local 46's request for restitution. To the extent that the district court made any finding regarding the federal contract fraud, the court merely acceded, for sentencing purposes, to the agreement between the Government and the defendant as to the calculation of the proceeds attributable to that fraud. This is further supported by the parties' discussion at sentencing that the total proceeds of that contract fraud overstated its seriousness.

To the extent that Local 46 argues that the Government failed to meet its obligations under the CVRA because it did not support Local 46's restitution claim and, in fact, failed to submit promised support papers, that argument is also unavailing. The CVRA requires the Government to aid *crime victims* in obtaining restitution. *See* 18 U.S.C. § 3771(c)(1). Because we conclude that the district court did not abuse its discretion in determining that Local 46 is not a "victim" under either the CVRA or the MVRA, the Government did not have any obligation to support its restitution motion.

### Conclusion

For the foregoing reasons, we hold the district court did not abuse its discretion in denying Local 46's motion to enforce its rights as a victim, and we DENY the petition for mandamus.