**UNITED STATES of America,**

v.

**Michael WHIPPLE, Defendant.**

**1:15-CR-00103 EAW**

United States District Court,
W.D. New York.

Signed December 21, 2015

Trini E. Ross, U.S. Attorney's Office, Buffalo, NY, for United States of America.

Rodney O. Personius, Personius Melber LLP, Buffalo, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge.

## I. INTRODUCTION

On July 7, 2015, Defendant Michael Whipple ("Defendant"), a former employee of M & T Bank, pled guilty to a one-count felony information charging financial institution fraud in violation of 18 U.S.C.

§ 1344. (Dkt.2). Sentencing was originally scheduled for October 7, 2015 (Dkt.5), but subsequently adjourned at the request of defense counsel to November 12, 2015, in order to allow time for Defendant to be deposed in a civil matter pending in New York State Supreme Court, Erie County, entitled *M & T Bank v. Client Server Direct, Inc., et al. v. Whipple, et al.* (Index No. 812932/2014) ("Erie County Civil Matter") (Dkt.7).

On November 6, 2015, the Court received materials submitted by Client Server Direct, Inc., ACN Properties, LLC, Leap Analytix, LLC, and Jeffrey and Holly Drilling [1] (collectively, the "CSD Parties"), consisting of affidavits submitted in connection with the sentencing of Defendant and attached exhibits, alleging that they were financially injured by the conduct of Defendant and are therefore victims of Defendant's crime, as defined by the Crime Victims' Rights Act, 18 U.S.C. § 3771. The CSD Parties represented that the material submitted had been generated, at least in part, from the Erie County Civil Matter. The CSD Parties requested that the aforementioned materials be filed under seal. The Court directed the Government and Defendant to file by November 10, 2015, papers setting forth their positions with respect to the CSD Parties' allegations that they were victims of Defendant's crime. (Dkt.11).

On November 6, 2015, the Court granted the Government's request to extend the time to file a response to the CSD Parties' submissions to November 17, 2015. (Dkt.12). Sentencing was adjourned to December 9, 2015. (*Id.*). The Court received the Government's response on November 16, 2015, and Defendant submitted his response the following day. Both the Government and Defendant argued that

---

**1.** Jeffrey and Holly Drilling represent that they are the owners of Client Server Direct, Inc., ACN Properties, LLC, and Leap Analytix, LLC.

the CSD Parties do not qualify as victims of Defendant's crime. The Government and Defendant agreed with the CSD Parties' contention that their responses should be filed under seal.

On December 2, 2015, the Court received a motion from the CSD Parties requesting that the Court order the Government and Defendant to produce to them "copies of all court papers filed in this matter, particularly its submissions on the sentencing of [Defendant]" in advance of the sentencing hearing scheduled for December 9, 2015, and to provide the CSD Parties with a reasonable opportunity to respond to those submissions.

On December 4, 2015, the Court issued an Order (1) directing the Clerk of Court to file under seal the materials relating to the CSD Parties' status as victims; (2) directing the Government and Defendant to provide to the CSD Parties copies of their submissions relating to the CSD Parties' status as victims, and permitting the CSD Parties to respond to those submissions; and (3) permitting the Government and Defendant to submit any additional materials relevant to the issue of the CSD Parties' status as victims. (Dkt.14). To accommodate the submission of this additional information, the Court adjourned sentencing to December 30, 2015. (Dkt.15).

The Court received the CSD Parties' additional submissions dated December 11, 2015. Defendant submitted reply submissions on December 18, 2015, and the Government submitted reply submissions on December 21, 2015.[2]

For the following reasons, the Court declines to recognize the CSD Parties as victims of Defendant's crime in connection with this proceeding.

## II. THE CSD PARTIES' STATUS AS VICTIMS

### A. The CSD Parties' Argument

The CSD Parties move to be recognized as victims of Defendant's crime, such that they would be entitled to all of the privileges afforded to crime victims under federal law, including "the right to receive copies of submissions and be heard with regard to Mr. Whipple's sentencing, and to dispute the Government's position that M & T was the only victim of Mr. Whipple's crimes." (Dec. 11, 2015 Memo of Law, p. 2; see also Nov. 24, 2015 Memo of Law, p. 2). The CSD Parties also clarify that they are not seeking an award of restitution, and concede that the Erie County Civil Matter "is the appropriate forum for them, after full discovery, to prove both the extent of the crimes committed against them and the extent of the damages to which they are entitled—both against Mr. Whipple and against M & T and its officers." (Dec. 11, 2015 Memo of Law, p. 1–2).

The CSD Parties contend that they are victims of Defendant's crime because their identities were stolen by Defendant, and this identity theft was "the method by which the single crime that is the subject of Mr. Whipple's plea bargain was committed." (Id. at 1). Specifically, the CSD Parties contend that Defendant forged the signatures of Jeffrey and Holly Drilling, and issued and funded fraudulent loans "to the beneficiaries of Mr. Whipple's largesse," secured by the Drillings' assets. (Id.; see also Nov. 24, 2015 Memo of Law, p. 4–5). Specifically, the CSD Parties maintain that Defendant advanced almost

---

**2.** The submissions referenced herein on this issue of the CSD Parties' status as victims are not yet on the case docket, as the Clerk's office is waiting to receive electronic copies of the papers submitted by the CSD Parties. Once electronic copies are received, all of the parties' submissions relating to the victim issue will be filed on the docket under seal.

$32 million in a revolving line of credit secured by the Drillings' companies' assets, and ultimately left the CSD Parties burdened by over $10 million, which resulted in financial difficulties to the CSD Parties. (Nov. 24, 2015 Memo of Law, p. 5). These difficulties included suspension and termination of their credit, the sale of real estate and cashing out life insurance so that the Drillings' businesses could survive, the destruction of their credit, and the shut-down of their businesses. (*Id.*; *see also* Victim Declaration of Jeffrey Drilling, dated Dec. 11, 2015, p. 2). The CSD Parties argue that these injuries have a sufficient nexus with the crime to which Defendant pled guilty. (Nov. 24, 2015 Memo of Law, p. 3; Dec. 11, 2015 Memo of Law, p. 3).

There is no claim by the CSD Parties that they were required to repay any of the fraudulent loans obtained by Defendant. Rather, it appears undisputed that M & T Bank closed out all of the fraudulent loans once Defendant's conduct was discovered (thus the reason that M & T Bank is identified as the victim in Defendant's plea agreement, as it advanced funds that were never recovered). Nonetheless, the CSD Parties contend that Defendant's conduct irrevocably damaged their credit worthiness, and ultimately led to the destruction of their businesses.

The CSD Parties also contend that Defendant should have been charged with identity theft, and the Government's failure to pursue that charge resulted in denial of relief to the CSD Parties, as well as to other customers of M & T who were victimized by Defendant, but never informed of identity theft. (December 11, 2015 Memo of Law, p. 9; *see also* Nov. 24, 2015 Memo of Law, p. 5).

**B. Designation of Victims**

The CVRA affords certain rights to victims of a crime. The statute defines a victim as "a person directly and proximately harmed as a result of the commission of a Federal offense...." 18 U.S.C. § 3771(e)(2)(A). "Under the CVRA, certain specific rights are acknowledged [for crime victims], including the 'right to be reasonably protected from the accused;' the 'right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding;' and the 'reasonable right to confer with the attorney for the Government in the case.'" *United States v. Tonawanda Coke Corp.*, 5 F.Supp.3d 343, 348 (W.D.N.Y.2014) (quoting 18 U.S.C. § 3771(a)). It is these privileges with which the CSD Parties wish to avail themselves.

 A victim must show direct and proximate harm, which "encompasses the traditional 'but for' and proximate cause analyses." *In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir.2009). "The necessary inquiry is a fact-specific one." *Id.* Generally, the district court is in the best position to determine whether relief may be afforded pursuant to the CVRA, and to develop reasonable procedures for affecting the rights afforded to victims under the CVRA. *See United States v. Rigas*, 409 F.3d 555, 562 (2d Cir.2005). The fact that the Government has not sought restitution on behalf of a particular party is not determinative of that party's status as a victim; rather, a district court must "consider[ ] whether there are potential victims and whether the court should exercise its discretion to order restitution...." *United States v. Atl. States Cast Iron Pipe Co.*, 612 F.Supp.2d 453, 533 (D.N.J.2009).

In addition to the rights listed above, a victim is also entitled to "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). Other federal statutes set out the procedures for courts

awarding restitution to crime victims. The Victim and Witness Protection Act, 18 U.S.C. § 3663 ("VWPA"), allows a court to order that a defendant pay restitution to crime victims. The Mandatory Victim Restitution Act, 18 U.S.C. § 3663A (the "MVRA"), makes restitution mandatory for victims of certain types of crimes. The MVRA would apply in this case because Defendant pled guilty to a crime involving an offense against property. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii) (MVRA applies to "an offense against property . . . including any offense committed by fraud or deceit"). Accordingly, if the Court were to recognize the CSD Parties as victims of Defendant's crime, it would generally be required to order restitution in their favor as part of sentencing in this case.[3]

Both the Government and Defendant argue that the CSD Parties are not entitled to victim status because the CSD Parties have not established that their injuries were proximately caused by the crime to which Defendant pled guilty under the superseding indictment, *i.e.*, financial institution fraud, in violation of 18 U.S.C. § 1344. (Defendant's Nov. 17, 2015 Memo of Law, p. 2; Government's Nov. 16, 2015 Memo of Law, p. 3).

Pursuant to the CVRA, "'[i]n a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described . . . , the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings.'" *Tonawanda Coke Corp.*, 5 F.Supp.3d at 350 (quoting 18 U.S.C. § 3771(d)(2)) (alteration in original).

In support of their contention that they should be recognized as victims, the CSD Parties have submitted various affidavits and voluminous exhibits totaling several hundred pages, comprised of bank records, emails, letters, bills, financing statements, transaction reports, credit reports, and account summaries. After reviewing these voluminous submissions, the Court is not able to determine based upon the record before it that the CSD Parties are victims of Defendant's crime. Rather, the Court's review and analysis of these materials reveal that further consideration of this issue would require multiple hearings where witnesses could be called and materials received into evidence, which would further delay the sentencing proceedings. In other words, additional consideration of this issue would interfere with the requirement of Fed.R.Crim.P. 32, that "[t]he court must impose sentence without unnecessary delay." *See* Fed. R.Crim.P. 32(b)(1). *See Tonawanda Coke*, 5 F.Supp.3d at 349 (declining to determine whether community members qualified as victims, as such a determination would require significant briefing and testimony, which would "greatly affect the ability to impose sentence 'without unnecessary delay,' as required by the Federal Rules of Criminal Procedure."); *United States v. Kline*, 199 F.Supp.2d 922, 927 (D.Minn. 2002) (declining to recognize corporations as victims and to award them restitution, because making such a determination would prolong the sentencing process; the court "does not intend to assume the role of a collection agency in this criminal case. Doing so would open the matter to further collateral claims by other corporations. It

---

**3.** The MVRA contains two exceptions to the restitution requirement, including if the court finds on the record that "the number of identifiable victims is so large as to make restitution impracticable," or "determining complex issues of fact related to the cause or amount

of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3).

may also open up extensive examination of corporate governance and issues far beyond the scope of this prosecution. It would unnecessarily prolong and complicate the sentencing process. The corporations' better remedy is a pursuit of any rights they possess in a private lawsuit.").

The issues related to the CSD Parties have already resulted in sentencing in this case being delayed for almost 3 months—from the original sentencing date of October 7, 2015 to December 30, 3015. There is no question that in order for the Court to definitively resolve the CSD Parties' allegations, sentencing would be further delayed for many more months.

Further, even if the Court determined that the CSD Parties were victims of Defendant's crime, it is unclear, based on the materials submitted by the CSD Parties, that it could reasonably reach a decision on the issue of restitution. *See Rigas,* 409 F.3d at 563 (declining to award restitution in securities and bank fraud case, where the amount of losses of potential victims "ha[d] not been established and doing so would indisputably take a great deal of time."); *see also United States v. McMillan,* 600 F.3d 434, 459–60 (5th Cir.2010) (district court did not err in determining that the amount of the loss attributable to the defendants' fraud could not reasonably be determined).

Based on the record before it, the Court is not able to determine whether, and to what extent, the harm to the CSD Parties' credit was caused by the offense of conviction. The CSD Parties' purported injury, *i.e.,* harm to their credit, does not appear to be directly related to the crime of financial institution fraud. As noted by both Defendant and the Government, a victim's harm must have resulted from the offense of conviction. *See* 18 U.S.C. § 3771(e); *United States v. Metal Lathers Local 46 Pension Fund,* 568 F.3d 81, 85–86 (2d Cir.2009). The CSD Parties contend that they are victims of identity theft; however, Defendant pled guilty to financial institution fraud, specifically, a scheme involving "moneys owned by and under the custody and control of, M & T Bank, a financial institution...." (Dkt. 2 at ¶ 1). The charges in the information focus on harm sustained by M & T Bank as a result of Defendant's actions, rather than any injury sustained by customers of M & T Bank.

Further, based upon representations contained in the CSD Parties' submissions, the Court would be required to engage in fact finding relating to the "22 legitimate M & T customers" who were allegedly defrauded by Defendant *(see* Victim Declaration of Jeffrey Drilling, dated Dec. 11, 2015, p. 6), to determine what additional individuals or entities other than the CSD Parties would qualify as victims. *(See also* CSD Parties' Memo of Law dated Dec. 11, 2015, p. 1 (contending that the Drillings and at least 15 other customers of M & T Bank were victimized by Defendant)). The probation department, the Government, and Defendant have identified only one victim (M & T Bank), and reopening an investigation to identify an unknown number of additional victims of a scheme spanning over five years from 2008–2013, would indisputably take a great deal of time.

The Court is also cognizant of the currently pending Erie County Civil Matter. The issues raised by the CSD Parties relating to their status as victims are purportedly the same as those raised in that state court action, and any determinations made relating to the CSD Parties' status as victims in this criminal proceeding could create collateral estoppel issues. *See Tonawanda Coke,* 5 F.Supp.3d at 350 (issues raised during the restitution hearings would be the same as those being considered by the New York State Supreme

Court, and extended sentencing proceedings could cause delay in the prosecution of those proceedings, or factual determinations made in federal court could cause collateral estoppel issues that could interfere with the parties' resolution of the state cases). Indeed, the CSD Parties have conceded that the state court proceeding is the proper venue for determination of the amount of restitution owed to the CSD Parties.

Similarly, recognition of the CSD Parties as victims in federal court could preclude them from recovering in the Erie County Civil Matter. Because Defendant's crime involves fraud, it falls within the scope of the MVRA, which generally *requires* this Court to award any victim restitution. *See* 18 U.S.C. § 3663A(a)(1) (district court "shall order ... that the defendant make restitution to the victim of the offense...."). Recognizing the CSD Parties as victims in this proceeding could potentially limit their recovery of damages to any restitution ordered as part of Defendant's sentence, contrary to the CSD Parties' expressed desire to litigate that issue in the state court proceedings. *See United States v. Boccagna*, 450 F.3d 107, 117 (2d Cir.2006) ("a sentencing court cannot order restitution that goes beyond making [the victim] whole.") (internal quotations and citation omitted) (alteration in original); *see also United States v. Gallant,* 537 F.3d 1202, 1254 (10th Cir.2008) ("The existence of pending civil litigation may in some cases be relevant to the balancing test established by § 3663A(c)(3)(B)'s complexity exception").

In light of the above, the Court declines to recognize the CSD Parties as victims of Defendant's financial institution fraud. Accordingly, their motion to be recognized as victims in this federal proceeding is denied. The Court intends to go forward with the sentencing in this matter on De-cember 30, 2015, and the CSD Parties will not be recognized as victims at that proceeding and their submissions will not be considered by the Court in connection with the sentencing.

Nothing contained in this Decision and Order shall be construed as the Court reaching a decision on the merits of the CSD Parties' claims that they are victims of Defendant's conduct nor shall it be used to provide preclusive effect in the Erie County Civil Matter. Rather, as discussed above, the Court declines to reach the merits of the CSD Parties' allegations due to the delay that would result in the sentencing in this case and the Court's conclusion that as set forth above, this is simply not the proper forum for resolution of these issues.

SO ORDERED.

